Isaac COLBERT, a/k/a Ike Colbert, a/k/a Ike Coleman *v.*
STATE of Arkansas

CR 90-179                                    801 S.W.2d 643

Supreme Court of Arkansas
Opinion delivered December 21, 1990

*Honey & Honey, P.A.*, for appellant.

*Steve Clark*, Att'y Gen., by: *John D. Harris*, Asst. Att'y Gen., for appellee.

OTIS H. TURNER, Justice. This is an appeal from a conviction for delivery of a controlled substance — rock cocaine — and a sentence of life imprisonment together with a fine of $25,000.

The appellant, an elderly black man, was charged by information with selling a small quantity of rock cocaine to undercover police officer Nick Sturghill through a third party go-between. A jury trial before an all-white jury resulted in the appellant's conviction and sentence.

The appellant raises five issues in seeking a reversal of his conviction. First, the trial court erred in failing to grant a mistrial due to the state's intimidation of a key defense witness. Second, the trial court erred in denying the appellant's request for a presentence report, and the sentence which was imposed was excessive. Third, the appellant was prejudiced by the trial court's erroneous admission of hearsay evidence. Fourth, the trial court erred in denying motions for discovery and for a directed verdict based upon lack of officer certification. Fifth, the appellant was denied the equal protection afforded by the Constitution of the United States by the state's use of its peremptory challenges to strike all of the black persons from the jury panel before which he was tried.

We have carefully reviewed the record, and as to the appellant's first four assertions of error there is no merit. Moreover, it is unlikely that the events giving rise to the appellant's first four issues will again surface at retrial. However, we are persuaded that the appellant's fifth point has merit, and we therefore reverse and remand for a new trial.

There is no challenge to the venire as a whole, but from the entire panel the names of at least four black members were drawn

for prospective jury service in this case. Juror Livingston, a black male, candidly admitted that he knew the defendant and did not feel that he could be fair and impartial. Livingston was properly excused by the court for cause.

Juror Byrd, a black female, complained that her job requirements had caused her to work all night the previous night. She expressed serious doubts that she could stay awake or be attentive and expressed a strong desire to be excused. She was subsequently excused by the court.

Upon the court's general voir dire of the panel, juror Evans, a black female, acknowledged that she knew the witness, Alma Henry, and that they had been schoolmates. It is significant to note at this point that juror Booker, a white female, also responded that she knew Alma Henry. When Evans's name was drawn she was asked no questions by either the state or the defense but was excused peremptorily by the state. Juror Booker was also drawn, and the state neither questioned her nor challenged her as a juror.

The name of juror Blake, another black female, was drawn and this juror was asked no questions by either the state or the defense but was peremptorily excused by the state.

The accused made a timely objection to the composition of the jury panel, as selected, contending that the prosecution exercised peremptory challenges to exclude all black persons from the jury. He further asserted that this action by the state violated his equal protection rights guaranteed by the Constitution and thus denied to him a fair and impartial trial by a jury of his peers. The prosecutor denied the defense allegation that racial bias was a factor in the exclusion of the black jurors and gave the following "racially neutral" reasons for the exercise of his peremptory challenges: first, the prosecutor stated that he struck juror Evans because she was related to "the Alvin Evans, who . . . has been prosecuted in this court and is on probation, and has been a witness [in another case] that we have had problems with. . ."; second, juror Blake was struck by the state because the prosecutor said that her children had been involved in previous municipal court actions and, "because of past experiences that I have had with her children, I chose to strike her."

The record is silent with regard to any action by the trial court on the objection made by the appellant. We could infer from the fact that the trial proceeded without any action being taken that the court accepted as sufficient the prosecutor's "racially neutral" explanation, and we could then discuss whether we agree or disagree with the trial court that the reasons given by the state were sufficient to satisfy the issue raised by the appellant. Under our previous holdings, however, even if the state's explanations satisfied the trial court, the court was still required to make a sensitive inquiry to eliminate any possibility of racial bias. *See Mitchell* v. *State*, 295 Ark. 341, 750 S.W.2d 936 (1988).

In *Batson* v. *Kentucky*, 476 U.S. 79 (1986), the United States Supreme Court clearly established that upon a showing of factual circumstances creating an inference that venire persons were excluded on account of their race, the burden then shifts to the state to come forward with a racially neutral explanation for each of the peremptory challenges. The trial court must then determine if *the defendant* "has established purposeful discrimination." In making that determination, the *Batson* Court said: "In deciding if the defendant has carried his burden of persuasion, a court must undertake a 'sensitive inquiry into such circumstantial and direct evidence of intent as may be available.' "

Later in the same opinion, the Court said that when factors have been shown which raise the "necessary inference of purposeful discrimination [and] . . . *when circumstances suggest the need*, the trial court must undertake a 'factual inquiry' that 'takes into account all possible explanatory factors' in the particular case." (Emphasis added.)

In establishing the necessity for making the determination that the challenges were not racially motivated, the *Batson* case is silent with regard to any recommended procedure. Indeed, the Court stated, "We decline, however, to formulate particular procedures to be followed upon a defendant's timely objection to a prosecutor's challenges." But in so holding, the Court emphasized that the prosecutor's explanation need not rise to the level justifying exercise of a challenge for cause.

Clearly, *Batson* placed the onus upon the trial court to first make a determination that the defendant has established pur-

poseful discrimination. If the defendant makes such a showing, the court is then to determine the basis for the state's challenges. If any doubt remains concerning the legitimacy of those challenges, the court must then conduct a sensitive inquiry into all of the circumstantial and direct evidence of intent as may be available.

In our first application of the requirements laid down by the United States Supreme Court, we interpreted *Batson* as *requiring* the trial court to undertake, in every instance, a "sensitive inquiry" into the direct and circumstantial evidence available to decide if the state has made an adequate explanation. *Ward* v. *State*, 293 Ark. 88, 733 S.W.2d 728 (1987).

In *Mitchell* v. *State*, we not only followed our decision in *Ward* v. *State* but also expanded its application. In *Mitchell*, the prosecutor extensively questioned Roger Petty, the sole black venireman, and later exercised a peremptory challenge to exclude him from the jury. Immediately upon striking Petty, the prosecutor stated, for the record, that Petty had been excused because Petty's answers did not seem to the prosecutor to be truthful and candid. The trial court accepted the state's explanation without any inquiry. This court reversed Mitchell's conviction for error in the jury selection process, stating:

> [W]here the use of a peremptory challenge results in the exclusion from the jury of all members of the defendant's minority race, it is not necessary to show exclusion of more than one minority juror of the same race as the defendant to make a prima facie case of discriminatory use of a peremptory challenge, and thus to invoke the 'sensitive inquiry' requirement.

295 Ark. at 350-1, 750 S.W.2d at 941.

In effect, we there held that the state's reasons for the exercise of its peremptory challenges — whatever those stated reasons might be and irrespective of any apparent legitimacy — would be insufficient to overcome an inference of racial bias in the selection process, even if such an inference arose solely as a result of circumstances alone. We now believe that our previous interpretations of the *Batson* holding were misdirected only to the extent that we have said that *Batson* requires a "sensitive

inquiry" by the trial court in *every* instance, notwithstanding the validity of the state's explanation for its peremptory challenges.

■ We now hold that upon a showing by a defendant of circumstances which raise an inference that the prosecutor exercised one or more of his peremptory challenges to exclude venire persons from the jury on account of race, the burden then shifts to the state to establish that the peremptory strike(s) were for racially neutral reasons. The trial court shall then determine from all relevant circumstances the sufficiency of the racially neutral explanation. If the state's explanation appears insufficient, the trial court must then conduct a sensitive inquiry into the basis for each of the challenges by the state.

■ The standard of review for reversal of the trial court's evaluation of the sufficiency of the explanation must test whether the court's findings are clearly against a preponderance of the evidence. In every instance, however, the court shall state, in response to the defendant's objections, its ruling as to the sufficiency or insufficiency of the racially neutral explanation provided by the state.

■■ In this case, the peremptory striking of two black jurors without even a question by the prosecutor, leaving an all-white jury to try this black defendant, raises an inference, if not a presumption, that the race of the jurors involved was a factor in the decision to strike. An inference of racial bias, having thus been established, the explanations given by the state for exclusion seem thin at best; moreover, they appear totally insufficient without further inquiry by the court for the purpose of eliminating any probability of racial motivation in the state's actions. Without the establishment by a preponderance of the evidence before the trial court that the challenges were for valid reasons without any racial bias, the defendant's constitutional rights have not been protected and the trial court's error requires a reversal and retrial.

Reversed and remanded.

DUDLEY, NEWBERN, and GLAZE, JJ., concur.

DAVID NEWBERN, Justice, concurring. The court's opinion correctly concludes that Isaac Colbert raised an "inference, if not a presumption, that the race of the jurors . . . [peremptorily

struck] was a factor in the decision to strike." The court's opinion also correctly concludes that the Supreme Court's opinion in *Batson* v. *Kentucky*, 476 U.S. 79 (1986), required the prosecution to offer racially neutral explanations why the black jurors were struck. The opinion observes that explanations, which were "racially neutral," were given by the prosecutor. It is then observed that the explanations were "thin," and the court's decision, which I believe to be correct, is to reverse and remand the case.

While I agree with all of the above, I cannot agree it is proper for the opinion to go out of its way to strike with crippling blows our opinions in *Ward* v. *State*, 293 Ark. 88, 733 S.W.2d 728 (1987), and *Mitchell* v. *State*, 295 Ark. 341, 750 S.W.2d 936 (1988). This case is a good example of the kind in which the requirement for a sensitive inquiry by the trial court is proper, and it is a good example to show why it is required.

My reading of the Supreme Court's opinion in the *Batson* case differs materially from that of the majority. The majority opinion quotation that *'the defendant* 'has established purposeful discrimination' " is taken from part "B" of the *Batson* case opinion in which the Supreme Court reviews a number of its cases on the general issue of racial discrimination in the judicial context. 476 U.S. at 93. Also a part of that review is the reference to a "sensitive inquiry" which first appeared in *Arlington Heights* v. *Metropolitan Housing Development Corp.*, 429 U.S. 252, 266 (1977). The majority opinion reference to the language, "When circumstances suggest the need. . . ." also comes from that review of other cases. 476 U.S. at 95. The majority opinion seems to suggest that these statements take something away from our decision in the *Ward* and *Mitchell* cases. Not so. They were used by the Supreme Court only as preliminaries to the resolution of the issue presented in the *Batson* case.

While the defendant may have an overall burden of proof on the issue of discrimination in the selection of jurors, I believe it is clear, and the majority opinion here recognizes, that once the prima facie display has been called to the court's attention, the burden of going forward with the evidence clearly shifts to the prosecution. When a pattern or other evidence of discrimination, either in the case at hand, or historically, appears, the defendant

has demonstrated the need for a factual inquiry. In deciding both the *Ward* case and the *Mitchell* case, we thought the sensitive inquiry was a requirement regardless of racially neutral explanations the prosecution may have had for peremptorily striking black jurors. We were correct. The majority opinion recognizes that the trial court in this case had a duty to do more than accept without comment, inquiry, or finding of fact the prosecutor's explanation. To say that such an explanation, or any other explanation, may be regarded as sufficient without any judicial inquiry makes a mockery of the essence of the *Batson* decision.

Had the trial court inquired behind the prosecution's racially neutral explanations, we would probably not have this issue before us. While I agree with the majority opinion that the explanations appear to be "thin," given other facts in the record, I am not certain that they might not have been wholly racially neutral. The problem is that the trial court, despite his much better position than ours for doing so, did not attempt to find out. Surely any prosecutor can offer neutral reasons, such as one offered in the *Mitchell* case, *i.e.,* that he did not believe the prospective juror was telling the truth.

DUDLEY and GLAZE, JJ., join in this concurrence.