Kenneth Ryan HOLLAMON *v.* STATE of Arkansas

CR 92-790                                          846 S.W.2d 663

Supreme Court of Arkansas
Opinion delivered February 8, 1993

*Daniel D. Becker* and *Terri L. Harris*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Kent G. Holt*, Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. This is an appeal from convictions for rape and attempted murder, which resulted in sentences of life imprisonment for rape and twenty-five years for attempted murder. The appellant, Kenneth Ryan Hollamon, appeals on the basis that he was denied equal protection of the laws due to a racially-motivated peremptory challenge by the prosecutor. He further urges that he is deaf and that the circuit court erred in failing to suppress his incriminating statement which was given without the assistance of an interpreter. We affirm the convictions and sentences.

The victim had been living in an apartment complex in Hot Springs for about two weeks when she reported to police that she had been raped at about 12:45 a.m. on May 10, 1991. On several prior occasions before the attack, she had talked to the appellant in the apartment building. She later testified at trial that the appellant had beaten her, raped her vaginally and anally, and forced her to perform oral sex on him. In addition, he strangled her three times, causing her to pass out on each occasion. After she awoke the third time, she found herself in a closet with a plastic covering over her head. She ran next door to a friend's house and called the police.

The appellant was found by the police on the grounds of the complex, and he was taken into custody. He was first interviewed by Detective Vicki Flint of the Hot Springs Police Department during the early morning hours after the attack. Detective Flint advised him of his *Miranda* rights, first reading them to him from the standard form and then allowing him to read them. He indicated that he understood his rights, and he initialed and signed the waiver and consent form. Hollamon gave two statements, and in the second statement he confessed to the rape.

The appellant filed a pre-trial motion to suppress the incriminating statement, asserting that Detective Flint had violated Ark. Code Ann. § 16-89-105(c) (Supp. 1991) by not providing an interpreter prior to taking the statement. A *Denno*

hearing was then conducted, and an interpreter was present. At the hearing, Detective Flint testified that she was unaware of any hearing problem at the time she took the appellant's statement, although she saw that he was wearing a hearing aid. Detective Gary Ashcraft also observed the hearing aid. The circuit court made preliminary findings that the appellant had demonstrated that he could hear and communicate and that his statement was "intelligently, knowingly, and voluntarily made." Three hearings on deafness then ensued: on August 19, October 7, and October 28, 1991. Expert witnesses, including an audiologist, a speech pathologist, and two rehabilitation counselors, testified. The court denied the motion to suppress by letter opinion and found that the appellant was not deaf within the meaning of § 16-89-105(c) but was able to communicate in a normal conversational tone. The case was tried before an all-white jury in a three-day trial, and the two convictions resulted.

## I. BATSON OBJECTION

Hollamon contends, as his first point for reversal, that he was denied equal protection under the state and federal constitutions because he is black, the victim is white, and the state, during jury selection, exercised a peremptory strike that excluded the sole black juror from the jury panel. As an adjunct to this argument, he urges that the circuit court failed to make the necessary sensitive inquiry under *Batson* v. *Kentucky*, 476 U.S. 79 (1986).

Prior to voir dire, a black woman named Stephanie Russell requested to be excused because she needed to be at work at the Majestic Hotel in Hot Springs for the next two days. She also stated that she had been subpoenaed to Garland County Circuit Court in Hot Springs the day before to testify on behalf of her boyfriend, who was also a client of the appellant's defense counsel. Her boyfriend, however, had failed to appear for trial.

Ms. Russell was seated for voir dire as the only black on the panel. Two other black panel members had been excused for employment reasons. At a bench proceeding after the jury was excused, the prosecutor moved to strike Ms. Russell for cause on the grounds that she had a close association with a fugitive defendant who was to be tried the preceding day, a circumstance that might dispose her to be "prejudiced against law enforcement in general," and also because she appeared "to be under the

influence of some kind of drugs or alcohol today." The court held that this was not sufficient for a challenge for cause.

The prosecutor then exercised peremptory challenges and excused Ms. Russell and one other juror. The appellant's counsel requested that in light of the fact that both the accused and the dismissed juror were black the state be required to give its reason for striking her under *Batson*. The prosecution responded:

> Your Honor, we're striking Stephanie Russell for the reasons we just reiterated for the Court, in that we have information now that she is the girlfriend of Anthony Barron, who is . . . a fugitive from justice from this Court. He was bench warranted yesterday.

> He was represented by Mr. Becker [the appellant's attorney]. At the time she was asked if she had any association with any lawyers in this case, it is my recollection that she did not come forward. She appears to be acting slow in her movements and responses today. Her speech was slower than normal when she came up to the Bench. She does not appear to be mentally at herself today. And for all those reasons — unless co-counsel has others — we have exercised our peremptory challenge against her.

The circuit court then asked the state's co-counsel if there were any other reason. When she replied in the negative, the court turned to the defense and asked for a response. Defense counsel argued that the explanation was not sufficient reason to strike the only black on the jury. Additional statements were made by counsel for both sides. The court expressed its concern about the relationship between the appellant's attorney and Ms. Russell and found it to be "sufficient basis for striking Ms. Russell."

In *Batson* v. *Kentucky, supra*, the United States Supreme Court held that a defendant who makes a prima facie showing of purposeful racial discrimination in juror challenges shifts the burden to the state to prove that the exclusion of jurors is not based on race. The Court, however, refrained from formulating procedures to implement *Batson*, and the states have been forced to chart their own way in devising procedures for the time, place, and manner of the *Batson* process.

We have held that when the neutral explanation

given by the state is sufficient, no sensitive inquiry is required. *Colbert* v. *State*, 304 Ark. 250, 801 S.W.2d 643 (1990). In *Colbert*, we declared:

> We now believe that our previous interpretations of the *Batson* holding were misdirected only to the extent that we have said that *Batson* requires a "sensitive inquiry" by the trial court in *every* instance, notwithstanding the validity of the state's explanation for its peremptory challenges.
>
> We now hold that upon a showing by a defendant of circumstances which raise an inference that the prosecutor exercised one or more of his peremptory challenges to exclude venire persons from the jury on account of race, the burden then shifts to the state to establish that the peremptory strike(s) were for racially neutral reasons. The trial court shall then determine from all relevant circumstances the sufficiency of the racially neutral explanation. If the state's explanation appears insufficient, the trial court must then conduct a sensitive inquiry into the basis for each of the challenges by the state.
>
> The standard of review for reversal of the trial court's evaluation of the sufficiency of the explanation must test whether the court's findings are clearly against a preponderance of the evidence. In every instance, however, the court shall state, in response to the defendant's objections, its rulings as to the sufficiency or insufficiency of the racially neutral explanation provided by the state.

304 Ark. at 254-255, 801 S.W.2d at 646.

Accordingly, the defendant must first establish a prima facie case of purposeful discrimination, which the appellant clearly did in this case when he pointed to a peremptory strike by the state dismissing the sole black person on the jury. After the circuit court inferred purposeful discrimination, the burden shifted to the prosecutor to give a racially neutral explanation for the peremptory challenge. In the bench proceeding, the circuit court questioned both the prosecutor and defense counsel on the challenge, and counsel for both sides addressed the issue. The circuit court stated that it was concerned about the relationship between the appellant's attorney and Ms. Russell and found that

the racially neutral explanation offered by the state was sufficient basis for its peremptory strike.

Prior to that decision, however, the court had refused to dismiss Ms. Russell for cause. The prosecutor's explanation of a peremptory challenge, though, need not rise to the level that would justify the exercise of a challenge by the trial court for cause. *Batson* v. *Kentucky, supra.*; *Pacee* v. *State*, 306 Ark. 563, 816 S.W.2d 856 (1991). Thus, the fact that the circuit court held the reasons insufficient for a challenge for cause does not mean that the same reasons could not show racial neutrality to support the exercise of a peremptory challenge.

We agree with the circuit court that the relationship of this juror to defense counsel is a valid concern that is not rooted in racial bias. Ms. Russell was friendly with a defendant who was to have been tried the previous day and defended by the appellant's counsel. She had been subpoenaed to testify as part of the defense. One could reasonably conclude that her sympathies lay with the defense. Hence, we cannot say, under these circumstances, that the circuit court's acceptance of the prosecutor's justification was clearly contrary to the preponderance of the evidence. Accordingly, a further inquiry on the matter was not warranted. On this point, we note that the appellant did not specifically ask the court to conduct a further inquiry. Moreover, we are not certain that what transpired in the bench proceeding was not a sensitive inquiry. Both counsel were questioned by the court, statements were made, and the court made its finding. In this regard, the appellant offers no clue as to what additional facts might have come to the circuit court's attention by virtue of a further inquiry.

Finally, we observe that during voir dire the appellant questioned the statistical representation of blacks in the jury pool. At one point, it was noted by appellant's counsel that there were four blacks in a pool of sixty persons. A challenge to the pool on grounds that it did not represent a cross-section of the community was mounted and the circuit court denied the objection. Although we have, in accordance with Supreme Court Rule 11(f), reviewed the issue, we note that it was neither raised on appeal nor sufficiently developed at trial for our consideration.

## II. SUPPRESSION OF STATEMENT BECAUSE OF DEAFNESS

The appellant argues, as his second point for reversal, that the circuit court erred in denying his motion to suppress his statement because no interpreter was made available. According to the appellant, the police officers violated the dictates of Ark. Code Ann. § 16-89-105(c) (Supp. 1991):

> (c) In the event a person who is deaf is arrested and taken into custody for any alleged violation of a criminal law of this state, the arresting officer and his superiors shall procure a qualified interpreter in order to properly interrogate the deaf person and to interpret the person's statement. No statement taken from the deaf person before an interpreter is present may be admissible in court.

The question we must resolve is whether the appellant was deaf at the time he gave his statement to Detective Flint. The term "deaf" is not defined in the statute. In *Black's Law Dictionary*, 6th ed. (1990), however, this definition following "Deaf person" appears, and the appellant urges us to adopt it:

> Any person whose hearing is totally impaired or whose hearing is so seriously impaired as to prohibit the person from understanding oral communications when spoken in a normal conversational tone.

The testimony offered at three deafness hearings was varied. An audiologist testified that the appellant had severe hearing loss in his right ear and impaired hearing in his left ear, which was remedied to some extent by a hearing aid. A speech pathologist testified that the appellant's language skills were akin to those of a six year old. Detective Flint testified that he was wearing a hearing aid at the time he gave his statements and that the appellant understood the questions asked during his interrogation. The victim also testified to her conversations with the appellant before the day of the rape and gave no indication that he could not hear.

There is also the fact that the appellant alludes to no example of how his asserted deafness encumbered him in any way during the interrogation process. Thus, we are confronted with a situation in which the appellant did not request an interpreter and

gave no indication that one was necessary. Had the appellant requested such assistance or given any indication that he suffered from hearing loss and did not understand the proceedings, our assessment of his status might be entirely different. However, no such indication of deafness was made to the investigating officers.

Moreover, the circuit court held three hearings on the appellant's auditory ability, as well as other pretrial hearings, and concluded that he was not deaf under the statute. We note in particular that the court had occasion to observe the appellant at these hearings and assess his abilities first-hand, which, no doubt, weighed heavily in its decision. The court then followed the definition in *Black's Law Dictionary* for deafness and found that the appellant could communicate with other persons in a normal conversational tone.

Under these circumstances, we cannot say that the circuit court clearly erred in its finding. Where witness credibility is involved, wide discretion is given to the trial court which has the opportunity to observe those witnesses, and conflicts in that testimony are for that court to resolve. *Lowe* v. *State*, 309 Ark. 463, 830 S.W.2d 864 (1992). Similar discretion should be afforded the trial court in assessing a witness's ability to hear.

There is one final point. The incriminating statement was not introduced into evidence during the state's case. The circuit court did rule that it was admissible for purposes of impeachment, and the appellant moved for a mistrial. The appellant, however, never took the stand. It is reasonable to assume that the threat of impeachment kept Hollamon off the witness stand, which raises the specter of prejudice. Yet, it is the burden of the defendant to show specifically how he was prejudiced by presenting a proffer of what testimony was pre-cluded or by some other demonstration of prejudice. This was not done, and we are left to speculate on what testimony Hollamon might have given had it not been for the threat of impeachment.

Furthermore, Hollamon's counsel made a secondary argument for mistrial that Hollamon's communication skills were so deficient that he could not have taken the stand in any event regardless of the impeachment potential. The circuit court rejected the argument, noting that it had observed the appellant's reaction to testimony at times during the course of the trial, the

implication being that the appellant could hear the proceedings in the courtroom. Again, we defer to the circuit court's superior ability to assess the appellant's ability to hear.

The record has been examined in accordance with Ark. Sup. Ct. R. 11(f), and it has been determined that there were no rulings adverse to the appellant which constituted prejudicial error.

Affirmed.