Anthony TUCKER v. STATE of Arkansas

CR 92-1044                                           855 S.W.2d 948

Supreme Court of Arkansas
Opinion delivered June 28, 1993
[Rehearing denied September 13, 1993.]

*Wilson & Associates*, by: *J. L. Wilson*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Teena L. White*, Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. The appellant, Anthony Tucker, a juvenile at the time of the crimes, appeals from convictions for aggravated robbery and kidnapping and sentences of forty years for each offense, to run concurrently. He raises specifically the failure to comply with *Batson v. Kentucky*, 476 U.S. 79 (1986) in jury selection, deficiencies in the juvenile transfer procedure and decision, an involuntary statement given

to a police officer, and ineffective counsel. We conclude that there is no merit to any of these arguments, and we affirm.

On the morning of January 10, 1991, Tucker, age 14, forced his way into the home of Katie Dillard in Brinkley at knife point. Dillard, at the time, was 58 years old. Tucker forced her to drive him to her bank in her car and withdraw the balance in her checking account, about $200.00. Afterwards, Tucker drove Dillard's car to a lake near a wooded area. Once at the lake, he dragged Dillard out of her car and threw her into the water and tried, unsuccessfully, to drown her. Failing in that attempt, he forced her into the trunk of her car and drove around in the car for a period of time. He picked up at least two of his friends and showed Dillard, who was still in the trunk, to them.

Tucker abandoned the car later in the day. The car was found by three men who rescued Dillard and took her to the Brinkley police station, where she identified the appellant from a school yearbook as her abductor. Tucker was arrested at his uncle's house that evening. His mother asked specifically that he not be questioned until she could be present or could arrange for an attorney. The appellant was placed in a holding cell at the police station. According to Officer Connie Wilhite of the Brinkley City Police Department, Tucker asked the police officer to stay with him. The appellant later, according to police officers, was advised of his rights, and he gave an oral statement in which he confessed to the entire crime to Brinkley Police Officer Mark Hamner. Tucker contests that he gave any statement voluntarily.

Tucker was charged with aggravated robbery, attempted murder, and kidnapping. He then filed a motion to transfer the matter to juvenile court. A hearing was held, where testimony from witnesses was taken. Following the hearing, the court denied the motion. Tucker next filed a motion to suppress the statement which he made to Officer Hamner on the basis that he was a minor without counsel or an adult present when he made the statement. No ruling was obtained on the motion.

On February 18, 1992, the appellant was tried before a jury comprised of the following racial composition: six blacks, five whites, and one oriental. During the jury selection process, the appellant made a challenge under *Batson* v. *Kentucky, supra*, to the State's peremptory challenges to remove two black jurors,

Early Mae Starr and Shirley Jones. The state contended that it had a racially neutral reason for striking these two jurors, and the circuit court agreed. The appellant then made another *Batson* challenge to the state's peremptory challenge of Eric Thompson, a black male. The State gave two reasons for striking Thompson: first, he appeared to have trouble understanding the proceedings, and, secondly, he expressed doubts about whether he could sentence Tucker to the Arkansas penitentiary. The court ruled that the reasoning was racially neutral and excused Thompson. A fourth challenge to a juror, Mr. Allen, was made under *Batson* and that, too, was denied.

The jury found the appellant guilty of all three charges and sentenced him to 30 years for attempted murder, 40 years for kidnapping, and 40 years for aggravated robbery, to run concurrently.

Tucker filed two motions for a new trial. In the second motion, he claimed ineffective assistance of counsel at trial and the circuit court's lack of jurisdiction to hear an attempted murder charge against a fourteen-year-old. A hearing was conducted, following which the circuit court vacated the attempted murder conviction and thirty-year sentence. The court denied the motion with regard to ineffective counsel.

## I. BATSON CHALLENGE

Tucker first contends that the circuit court erred in excusing Eric Thompson, a black man, because the state's peremptory strike was racially motivated. Race was a factor in the trial, according to Tucker, because he is black and the victim, Dillard, is white.

In support of his position, the appellant points to the fact that Thompson was a member of a cognizable racial group. According to Tucker, the state vacillated when giving its reason for striking Thompson. At first, the prosecutor said that Thompson had difficulty understanding the proceedings. Later, the prosecutor gave two reasons for challenging Thompson: he had difficulty understanding the proceedings, and he expressed doubts that he would be able to send Tucker to prison, if the appellant were found guilty. The appellant further argues that though black women were seated on the jury, Thompson was challenged as a

black male. He also contends that when the prosecutor argued that Thompson would have difficulty putting "them" in jail, this was a racial comment on the part of the prosecutor. Finally, Tucker alluded to a history of racial discrimination in Monroe County.

We first take note of the fact that the *voir dire* of juror Thompson was not included in the record; only the succeeding discussion on the *Batson* objection was. As part of that discussion, the attorneys and the circuit court reconstructed what occurred during *voir dire*. This court, nevertheless, is at somewhat of a disadvantage not having at our disposal the precise questions and answers pertaining to this juror.

We next observe that at the time the state challenged Thompson the racial composition of the jury was four blacks, five whites, and one oriental.[1] The record shows that *Batson* motions were made regarding two previous jurors and denied. Tucker, however, does not argue that the previous strikes form a pattern of racial discrimination or comprise part of a prima facie case of purposeful discrimination. In considering the various arguments he does advance, we are unable to conclude under these facts that Tucker raised a prima facie case of racial discrimination in connection with the challenge to Thompson.

We have considered the *Batson* decision several times in recent years. *See Hollamon v. State*, 312 Ark. 48, 846 S.W.2d 663 (1993); *Watson v. State*, 308 Ark. 444, 825 S.W.2d 569 (1992); *Pacee v. State*, 306 Ark. 563, 816 S.W.2d 856 (1991); *Colbert v. State*, 304 Ark. 250, 801 S.W.2d 643 (1990). In doing so, we have addressed what procedures are appropriate for a *Batson* determination, recognizing that the United States Supreme Court specifically declined to formulate procedures in the *Batson* decision for purposes of implementing it.

In *Batson*, the Supreme Court held that when a defendant makes a prima facie case of purposeful racial discrimination in juror challenges, this shifts the burden of proof to the state to prove that the exclusion of jurors is not based on race. The state must then give a neutral explanation of the juror strikes. If

---

[1] The final racial makeup of the jury was six blacks, five whites, and one oriental.

the state fails in this, a sensitive inquiry in the nature of a more comprehensive hearing must follow. In *Colbert* v. *State, supra,* we outlined the procedure further:

> We now believe that our previous interpretations of the *Batson* holding were misdirected only to the extent that we have said that *Batson* requires a "sensitive inquiry" by the trial court in *every* instance, notwithstanding the validity of the state's explanation for its peremptory challenges.
>
> We now hold that upon a showing by a defendant of circumstances which raise an inference that the prosecutor exercised one or more of his peremptory challenges to exclude venire persons from the jury on account of race, the burden then shifts to the state to establish that the peremptory strike(s) were for racially neutral reasons. The trial court shall then determine from all relevant circumstances the sufficiency of the racially neutral explanation. If the state's explanation appears insufficient, the trial court must then conduct a sensitive inquiry into the basis for each of the challenges by the state.
>
> The standard of review for reversal of the trial court's evaluation of the sufficiency of the explanation must test whether the court's findings are clearly against a preponderance of the evidence. In every instance, however, the court shall state, in response to the defendant's objections, its ruling as to the sufficiency or insufficiency of the racially neutral explanation provided by the state.

304 Ark. at 254-255, 801 S.W.2d at 646. We endorsed the *Colbert* reasoning most recently in *Hollamon* v. *State, supra.*

In the case before us, the circuit court requested that the prosecutor explain the challenge to Thompson. The prosecutor objected to this since he did not believe that Tucker had made a prima facie case of purposeful discrimination. Following his objection, the prosecution did give his explanation. We agree with the prosecutor that this was not necessary. Under these circumstances, there was no inference of purposeful discrimination that could be made and, hence, no prima facie case which required a neutral explanation.

At the time of the challenge to Thompson, four

blacks were seated on the jury. Though, again, we are hampered without the record of the *voir dire* proceedings before us, the subsequent discussion among the court and counsel presents no basis upon which an inference of racial prejudice could be made. The mere fact that a black juror has been struck is not enough in the face of a jury already comprised of four black members to shift the burden to the state to come forward with a neutral explanation. Nor can any meaningful weight be given to the prosecutor's use of the pronoun "them" in discussing the prospective juror's reluctance to sentence members of his own race to prison. And, finally, no reason or authority has been advanced to extent *Batson* to gender challenges within a racially cognizable group. We can divine no reason for doing so in this case.

In sum, we affirm the circuit court in finding no violation of *Batson* v. *Kentucky*. Under these circumstances, however, we are of the opinion that the state was not required to present a neutral explanation and that a prima facie case of purposeful racial discrimination had not been made.

## II. JUVENILE TRANSFERS

Tucker next argues that the hearing on his motion to transfer this matter to juvenile court did not meet the due process standards required by Ark. Code Ann. § 9-27-318 (Supp. 1991).

Tucker, however, failed to include a transcript of the juvenile transfer hearing in the record. Thus, we are at a loss to determine what precisely transpired at the hearing. Without a transcript of the hearing, we must assume that the court ruled correctly based on the arguments and testimony presented. *See Woosley* v. *Arkansas Real Estate Comm'n*, 263 Ark. 348, 565 S.W.2d 22 (1978); *Finch* v. *State*, 262 Ark. 313, 556 S.W.2d 434 (1977).

We can glean from the circuit court's order denying the transfer that a hearing was held and testimony taken. Moreover, it is evidence that the court clearly did consider the seriousness of the crimes charged which involved violence. We have held that it is not necessary for the court to give equal weight to each of the factors in § 9-27-318(e). *Vickers* v. *State*, 307 Ark. 298, 819 S.W.2d 13 (1991); *Walker* v. *State*, 304 Ark. 393, 803 S.W.2d 502, *reh'g denied* 304 Ark. 402A, 805 S.W.2d 80 (1991).

We have also held that the information alone is sufficient evidence of the serious and violent nature of the crime to support an order denying the motion to transfer. *Id.*

There was no error by the circuit court in disallowing the transfer. We affirm the court on this point.

### III. VOLUNTARY STATEMENT

■ Tucker next urges that the circuit court erred in admitting his statement because the facts reveal that it was not given voluntarily. It is not necessary for us to address this issue. The record reflects no ruling from the circuit court on Tucker's motion to suppress the statement. In addition, when the statement was relayed to the jury by Officer Hamner, there was no objection by counsel. The issue, therefore, is not preserved for our review. *Mercedes-Benz Credit Corp.* v. *Morgan*, 312 Ark. 225, 850 S.W.2d 297 (1993) (supplemental opinion); *Fretwell* v. *State*, 289 Ark. 91, 708 S.W.2d 630 (1986); *Tosh* v. *State*, 278 Ark. 377, 646 S.W.2d 6 (1983).

### IV. INEFFECTIVE COUNSEL

For his final point, Tucker argues that he was entitled to a new trial because his trial counsel was ineffective.

■ The current Rule 37 of the Arkansas Rules of Criminal Procedure became effective January 1, 1991, and provides the procedure for collateral attacks on judgments of conviction. The crimes at issue occurred after the effective date of our current Rule 37. Rule 37 sets forth the procedure to be followed to collaterally attack a judgment of conviction based on ineffective counsel. We have held that we will not consider collateral attacks on a judgment of conviction, including ineffective counsel, as part of the direct appeal. *See, e.g., Tisdale* v. *State*, 311 Ark. 220, 843 S.W.2d 803 (1993); *Knappenberger* v. *State*, 278 Ark. 382, 647 S.W.2d 417 (1983). This point, accordingly, is not properly before us.

Affirmed.