Sam Houston GILLAND *v.* STATE of Arkansas

CR 94-396                                          883 S.W.2d 474

Supreme Court of Arkansas
Opinion delivered September 26, 1994

*Bill Luppen*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Kent G. Holt*, Asst. Att'y Gen., for appellee.

STEELE HAYS, Justice. Appellant Sam Houston Gilland was sentenced to forty years in the Arkansas Department of Correction following his conviction for first degree murder. On appeal, he argues two points for reversal: (1) the prosecution unconstitutionally used its peremptory strikes to exclude black males from the petit jury and (2) the trial court unduly restricted the closing argument for the defense. Finding no error we affirm.

Since the sufficiency of the evidence is not disputed, no extensive recitation of the facts is necessary. Gilland and the victim got into an altercation at a Little Rock truck stop ending in a fatal shooting. Gilland contended the victim called him a "nigger" and threatened to kill him. He testified the two struggled over a pistol, which belonged to the victim, and the gun discharged. However, there was testimony that Gilland drew the weapon from his back pocket and fired one shot into the cab of the victim's truck and left the truck stop.

I

## The Prosecution Unconstitutionally Used Its Peremptory Strikes To Exclude Black Males From the Petit Jury

Gilland was tried before a jury comprised of two black women, four white women, and six white men. Gilland contends he was denied equal protection because he is a black male, the victim is white, and the state exercised peremptory strikes to exclude two black males from the jury panel. He argues specifically the failure to comply with *Batson* v. *Kentucky*, 476 U.S. 79 (1986) and *J.E.B.* v. *Alabama ex rel T.B.*, 511 U.S. ___, 128 L. Ed. 2d 89 (April 19, 1994).

The United States Supreme Court has held that the Equal Protection Clause forbids a prosecutor from using peremptory challenges to exclude potential jurors solely on account of their race. *Batson, supra; Powers* v. *Ohio*, 499 U.S. 400 (1991). In *J.E.B.*, the Supreme Court found that "gender, like race, is an unconstitutional proxy for juror competence and impartiality." The Court noted that as with race-based *Batson* claims, a party alleging gender discrimination must make a prima facie showing of intentional discrimination before the party exercising the challenge is required to explain the basis for the strike. *J.E.B., supra.*

The appropriate procedure to be followed pursuant to a *Batson* challenge has been defined. First, the defendant must make a prima facie case that racial discrimination is the basis of a juror challenge. *Franklin* v. *State*, 314 Ark. 329, 863 S.W.2d 268 (1993); *Tucker* v. *State*, 313 Ark. 624, 855 S.W.2d 948 (1993). A prima facie case may be established by: (1) showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose, (2) demonstrating total or seriously disproportionate exclusion of blacks from the jury, or (3) showing a pattern of strikes, questions or statements by a prosecuting attorney during voir dire. *Thompson* v. *State*, 301 Ark. 488, 785 S.W.2d 29 (1990).

In the event the defendant makes a prima facie case, the State has the burden of showing that the challenge was not based upon race. Only if the defendant makes a prima facie case *and* the State fails to give a racially neutral reason for the challenge is the court required to conduct a sensitive inquiry. *Franklin,*

*supra; Tucker, supra.* The standard of review for reversal of the trial court's evaluation of the sufficiency of the explanation must test whether the court's findings are clearly against a preponderance of the evidence. *Colbert* v. *State*, 304 Ark. 250, 801 S.W.2d 643 (1990).

During the jury selection process, the appellant made a challenge under *Batson* to the State's peremptory challenge to excuse a black male juror, Dexter Calloway. The trial court concluded the appellant failed to make a prima facie case that racial discrimination was the basis of the juror challenge. The court noted that of the jurors on the panel two were black and six were white. Further, the State had exercised four peremptory challenges — only one of which was a black juror (Mr. Calloway). Nevertheless, the State undertook to explain that the juror had failed to make eye contact during voir dire and was unresponsive to questions.

When the state subsequently struck Clifford Morgan, a black male, appellant made another *Batson* challenge. At that point the jury consisted of two black females, four white females and five white males. The trial judge opined that a pattern had developed because the state had struck the only two black males called to the jury. The state responded that Morgan gave evasive responses to questions on the burden of proof, indicating he expected the state "to prove its case by 100%." Asked whether people are responsible for their actions, he stated, "It depends." Further, the state explained he brought up the death penalty inappropriately and even after being told it had no application to this case, he hesitated with each answer. The trial court ruled the state had presented racially neutral reasons which were borne out by what the trial court had observed during voir dire.

■ On appeal, the appellant contends the prosecution unconstitutionally used its peremptory strikes to exclude black males, specifically, Clifford Morgan. The appellant relies on *Batson* and *J.E.B.* read in conjunction. However, appellant did not properly raise the gender issue and did not seek a ruling on that basis. At trial, Gilland objected under *Batson* to the State's use of a peremptory challenge to excuse juror Clifford Morgan. The appellant, however, did not object based upon gender or refer to *J.E.B.*, which was not yet decided at the time of appellant's trial. Because an appellant may not change his grounds for objection

on appeal, this point is not preserved on appeal. *Cloird* v. *State*, 314 Ark. 296, 862 S.W.2d 211 (1993).

Arguably, the gender issue was introduced in the response of the trial judge to appellant's *Batson* objection:

> TRIAL COURT: I am seeing a pattern develop, but it's not exactly the way you've outlined it. The state has exercised six of its eight strikes. Four of those strikes have been against females. The state has exercised only two strikes against males, and both of those are black males. Both were the only two black males that have been called to the panel and who have been eligible for strikes. Even though we had two jurors left, those were both black females. So for that reason at this point, I could see what could be termed a pattern involved, in that all black males who have been called have been stricken by the state. There have been no white males struck at all. The defendant in this case is a black male. Because I see this pattern I am now going to ask the state to respond to this motion.

When the prosecutor concluded his reasons for striking Mr. Morgan, the trial judge ruled as follows:

> TRIAL COURT: The court finds that the reason given by the state was racially neutral. I note that the other jurors were asked similar questions and none had similar responses that Mr. Morgan did. The state does not have to show that they had reason for a challenge for cause, but only that the reason was *racially neutral*. I find that is borne out by what I have heard and seen during this *voir dire*. The *Batson* objection is overruled.

> DEFENSE COUNSEL: In order to preserve my record, I would at this time to ask for a mistrial based on the *Batson* objection.

■■ Thus the gender issue was neither presented, nor ruled on. The burden of obtaining a ruling is on the appellant and matters left unresolved may not be raised on appeal. *Parmley* v. *Moore*, 317 Ark. 52, 876 S.W.2d 243 (1994). Nor has the appellant made any attempt to establish that males have a recognizable status within a cognizable racial group. *See Batson, supra;*

*Castaneda* v. *Partida*, 430 U.S. 482 (1977). Moreover, in *Tucker* v. *State*, 313 Ark. 624, 85 S.W.2d 948 (1993), we wrote:

> And finally, no reason or authority has been advanced to extend *Batson* to gender challenges within a racially cognizable group. We can divine no reason for doing so in this case.

■ Accordingly, we hold the issue preserved for review is whether the State unconstitutionally used its peremptory challenges to exclude blacks from the jury. We further hold that given the circumstances as a whole, the appellant failed to establish a prima facie case of purposeful discrimination.

In *Thompson* v. *State*, 301 Ark. 488, 785 S.W.2d 29 (1990), in rejecting a *Batson* argument we emphasized that the jury which convicted the appellant included three black members. We concluded that the presence of minority members on the jury, while by no means determinative of the question of whether discrimination occurred, is significant. Indeed, in *Ward* v. *State*, 293 Ark. 88, 733 S.W.2d 728 (1987) we said the best answer the state can have to a charge of discrimination is to be able to point to a jury which has some black members. In *Thompson, supra*, we noted that, when the black jurors were seated on the jury, the prosecutor still had peremptory challenges remaining. *See also Owens* v. *State*, 300 Ark. 73, 777 S.W.2d 205 (1989). Additionally, the Court noted that the number of black persons serving on the jury (three) was greater than the number struck by the prosecutor (two).

In the instant case, the jury that convicted the appellant included two black persons. Both of those jurors were seated on the jury prior to the peremptory challenges to either Mr. Calloway or Mr. Morgan. Finally, the number of black persons serving on the jury was the same as the number struck by the prosecutor.

II

The Trial Court Unduly Restricted
The Closing Argument For The Defense

The appellant contends the trial court erred by not allowing the defense counsel to refer during closing argument to testimony given by Clinton Stackhouse, called by the state. During cross-examination the following occurred:

Q. All right. In your statement [to the police] you say . . . The white male got back in his truck and tried to take the pistol away from the *colored man.* Isn't that what you told the police.

A. Yes. (Emphasis supplied.)

During closing argument, counsel for the defense made the following comment:

Now, Clinton Stackhouse, again, like Miss Dunklin, he doesn't tell you what he told the police that night. He didn't tell you what he told the police was that *the white man and the colored man, the colored man — that's what he called him —* were having a fight with that gun.

The State objected on the ground there was no testimony that Mr. Stackhouse had made the statement. The trial court said he did not "remember hearing that word used." Counsel for the defense responded that the witness was questioned regarding the prior statement. The following exchange then occurred:

(Defense Counsel): Your Honor, I read his statement to him, and I said did you not say that the white man and the colored man were fighting with the gun out there? He was right —

The Court: What was his response?

(Counsel): His response was *I don't remember saying that.* (Emphasis supplied.)

The Court: All right. Now, now did you introduce his statement in evidence to prove that he did, in fact, say it?

(Counsel): No, . . .

The Court: . . . Unless he admits that statement, having made that statement, or it is introduced into evidence, it's not in evidence.

■■ On appeal, the appellant correctly notes that the witness affirmed his use of the term "colored man" in his prior statement. Indeed, the appellant correctly asserts the trial court mistakenly concluded the witness had not admitted the remark and sustained the State's objection. However, defense counsel mis-

takenly informed the trial court that Mr. Stackhouse's response was, *"I don't remember saying that."* (Emphasis supplied.) On that basis the trial court concluded the testimony was not in evidence and was not subject to comment. An appellant may not claim reversible error based on his or her own error at trial. *Drymon* v. *State*, 316 Ark. 799, 875 S.W.2d 73 (1994). Moreover, we do not regard the point as rising to the level of reversible error. *Gunter* v. *State*, 313 Ark. 504, 857 S.W.2d 156 (1993).

Affirmed.

DUDLEY, J., not participating.