Bennie CLEVELAND *v.* STATE of Arkansas

CR 93-188                                           888 S.W.2d 629

Supreme Court of Arkansas
Opinion delivered November 21, 1994

*Thomas D. Deen*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Brad Newman*, Asst. Att'y Gen., for appellee.

DONALD L. CORBIN, Justice. This case is before us on certiorari from the United States Supreme Court vacating our deci-

sion reported as *Cleveland* v. *State*, 315 Ark. 91, 106-A, 865 S.W.2d 285, 292 (1993), and remanding the case for our reconsideration in light of the Court's decision reported as *J.E.B.* v. *Alabama ex rel. T.B.*, 511 U.S. ___, 114 S. Ct. 1419 (1994). After a jury trial, appellant was convicted of five charges: capital murder, attempted capital murder, kidnapping, aggravated robbery, and theft of property; the kidnapping and aggravated robbery charges were merged in the capital murder conviction. *Cleveland*, 315 Ark. 91, 106-A, 865 S.W.2d 285, 292. Appellant was sentenced consecutively to life imprisonment without parole for the capital murder, thirty years imprisonment for the attempted capital murder, and ten years imprisonment for the theft of property. *Id.* Upon appeal to this court, we affirmed the convictions. *Id.* We now reverse and remand this case to Desha County Circuit Court for a new trial.

During *voir dire* proceedings prior to the empanelment of the jury for appellant's July 1992 trial, the following colloquy occurred:

> MR. ROBINSON [counsel for defendant]: There is one more challenge. This has not yet become the law, but maybe one of these days, I guess — We noticed in the strikes that of the ten challenges, that there, the, there is a gender bias. Nine females were struck and only one male by the State.
>
> THE COURT: All right. Are you — Are you raising that as an objection to the use of the, the nine female strikes by the State?
>
> MR. ROBINSON: Yes, sir. I have no case authority as the Court is well aware.
>
> THE COURT: The Court is frankly not aware of any at this time. It has been extended, but it hasn't been extended past —
>
> MR. ROBINSON: Yes, Sir.
>
> THE COURT: — past racially identifiably [sic] groups or, or parties at this point, as far as the Court knows. All right. But you have made your record.

We take judicial notice of the fact that the case law alluded to in this exchange was *Batson* v. *Kentucky*, 476 U.S. 79 (1986) (a Kentucky state court criminal conviction on petition for certiorari) and its progeny. In *Batson*, the Court held that intentional discrimination on the basis of race in the exercise of peremptory challenges by a prosecutor in a criminal trial is violative of the protections afforded the defendant and the excluded juror under the Equal Protection Clause of the Fourteenth Amendment of our federal Constitution. Subsequently, the Court has extended this principle to govern civil proceedings as well, reasoning, in the words of Justice Blackmun: "We have recognized that whether the trial is criminal or civil, potential jurors, as well as litigants, have an equal protection right to jury selection procedures that are free from state-sponsored group stereotypes rooted in and reflective of, historical prejudice." *J.E.B.*, 511 U.S. at ____, 114 S. Ct. at 1421 (citations omitted).

At the date of appellant's trial, however, the *Batson* principle had not been extended by the Court to prohibit intentional discrimination on the basis of *gender* in the use of peremptory challenges in jury selection, and a division of authority existed among those state and lower federal courts which had considered the issue. *Cleveland*, 315 Ark. 91, 106-A, 865 S.W.2d 285, 292. The trial judge denied appellant's objection to the gender-based nature of the state's peremptory challenges, and on appeal to this court, we declined to extend *Batson* to this case, in view of the fact that the *J.E.B.* case, an Alabama state court paternity action on grant of certiorari, was then pending and expected to provide the Court the opportunity to resolve that issue. *Id.*

On April 19, 1994, the *J.E.B.* case was decided, and the Court indeed extended the *Batson* principle to intentional discrimination in the use of peremptory strikes on the basis of gender, stating "gender, like race, is an unconstitutional proxy for juror competence and impartiality." *J.E.B.*, 511 U.S. at ____, 114 S. Ct. at 1421. In the *J.E.B.* case, the State of Alabama filed a civil paternity action on behalf of the petitioner, *id.* at ____, 114 S. Ct. at 1433 (O'Connor, J., concurring), and used nine of its ten peremptory challenges to remove men from the jury pool. The Court, in reversing and remanding the state court decision, held that "[i]ntentional discrimination on the basis of gender by state actors violates the Equal Protection Clause, particularly, where,

as here, the discrimination serves to ratify and perpetuate invidious, archaic, and overbroad stereotypes about the relative abilities of men and women." *Id.* at ___, 114 S. Ct. at 1422. We now hold that the *J.E.B.* decision also governs the prosecutor's use, as the state actor in this case, of its peremptory challenges.

In *J.E.B.*, the Court also confirmed that the requirements governing proof in the trial court of the unconstitutional nature of challenged race-based peremptory strikes outlined in the *Batson* decision also apply to proof of challenged gender-based peremptory strikes in jury selection. *J.E.B.*, 511 U.S. at ___, 114 S. Ct. at 1429-30. Since *Batson*, we have applied these requirements to compel the following procedure at trial to protect the constitutional rights of a defendant who objects to the state's use of its peremptory challenges on grounds of race bias:

> [U]pon a showing by a defendant of circumstances which raise an inference that the prosecutor exercised one or more of his peremptory challenges to exclude venire persons from the jury on account of race, the burden then shifts to the state to establish that the peremptory strike(s) were for racially neutral reasons. The trial court shall then determine from all relevant circumstances the sufficiency of the racially neutral explanation. If the state's explanation appears insufficient, the trial court must then conduct a sensitive inquiry into the basis for each of the challenges by the state.
>
> The standard of review for reversal of the trial court's evaluation of the sufficiency of the explanation must test whether the court's findings are clearly against a preponderance of the evidence. In every instance, however, the court shall state, in response to the defendant's objections, its ruling as to the sufficiency or insufficiency of the racially neutral explanation provided by the state.

*Colbert* v. *State*, 304 Ark. 250, 255, 801 S.W.2d 643, 646 (1990).

A prima facie case of purposeful discrimination, in the context of the *Batson* test for challenged race-based peremptory strikes, we have held, may be made "by showing one of the following: (1) the totality of the relevant factors gives rise to an inference of discriminatory purpose; (2) the total or seriously

disproportionate exclusion of Negroes from the jury venires; or (3) a pattern of strikes, or questions and statements by a prosecuting attorney during voir dire." *Wainwright* v. *State*, 302 Ark. 371, 382, 790 S.W.2d 420, 425 (1990), *cert. denied*, 499 U.S. 913 (1991) (citation omitted). In this case, appellant's objection to the state's use of 90% of its peremptory challenges to remove women from the jury pool sufficed to raise an inference, if not a presumption, that the gender of the jurors involved was a factor in the decision to strike. *Colbert*, 304 Ark. 250, 801 S.W.2d 643; *see also J.E.B.*, 511 U.S. ___, 114 S. Ct. 1419.

That inference established, the explanation given by the state for its challenged strikes appears totally insufficient without further inquiry by the court to eliminate any probability of gender motivation in the state's actions. The state's explanation was as follows:

> [PROSECUTING ATTORNEY]: Your Honor, I would just point out for the purposes of the record regarding the motion the Defense made on gender bias, that when you take a look at the Defense strikes, if, in fact, the State's were gender biased one way, so are the Defense's. Ten of the twelve are against males. And, you know, it appears to balance out.

In this case, because the trial court failed to: (a) make a finding, from all relevant circumstances, as to the sufficiency of the state's gender-neutral explanation, and (b) as it appears was also required on these facts, then conduct a sensitive inquiry into the basis for each of the challenges by the state, the evidence before us does not establish that the state's challenges were for valid reasons without any gender bias. Therefore, the defendant's constitutional rights have not been protected and the trial court's error requires a reversal and retrial. *Colbert*, 304 Ark. 250, 801 S.W.2d 643.

In so ruling, we reject the state's argument that the better remedy here is to remand this case to the trial court first for the limited purpose of conducting an evidentiary hearing to determine whether an equal protection violation was in fact committed at the July 1992 trial proceedings. We are mindful that our holding in this case is consistent with our prior rulings regard-

ing trial court failures to comply with the requirements of *Batson* hearings. *Colbert*, 304 Ark. 250, 801 S.W.2d 643; *Wainwright,.* 302 Ark. 371, 790 S.W.2d 420, *cert. denied*, 499 U.S. 913; *Mitchell* v. *State*, 295 Ark. 341, 750 S.W.2d 936 (1988); *Ward* v. *State*, 293 Ark. 88, 733 S.W.2d 728 (1987). In addition, it is noteworthy that our holding will both avoid the difficulties of continuing and concluding the *Batson* hearing in this case more than two years after the original *voir dire*, and should more effectively expedite a speedy and economical ultimate disposition of this matter than would be the circumstance if we adopted the state's argument.

Reversed and remanded.

HAYS and BROWN, JJ., dissent.

ROBERT L. BROWN, Justice, dissenting. This decision is worrisome because this court, for the first time, has assumed jurisdiction of an issue that was never developed in the trial court and has decided it. By doing so, this court has taken original jurisdiction over the matter which is in direct contravention of our State Constitution. Ark. Const. art. 7, § 4.

As the majority correctly points out, during *voir dire* defense counsel made an objection based on gender discrimination by the prosecutor in jury selection. Defense counsel readily admitted that he had no authority for the objection, and the trial court concurred that it knew of none. Accordingly, the court refused to entertain the objection, and no *Batson/J.E.B.* procedure was followed by the court and the parties to determine whether a violation had occurred.

This court has made it clear what that procedure is in the racial context. *See Tucker* v. *State*, 313 Ark. 624, 855 S.W.2d 948 (1993); *Colbert* v. *State*, 304 Ark. 250, 801 S.W.2d 643 (1990). First, a defendant must make a *prima facie* case of purposeful racial discrimination in juror challenges. If such a case is made, this shifts the burden of proof to the State to prove that the exclusion of jurors is not based on race. The State must then give a neutral explanation of the juror strikes. If the State fails in this, a sensitive inquiry in the nature of a more comprehensive hearing must follow. We have added that the standard of review for reversal of the trial court's evaluation of the sufficiency of the

explanation must be whether the court's findings are clearly against a preponderance of the evidence. Hence, the trial court must state its findings and ruling on the sufficiency or insufficiency of the racially neutral explanation provided by the State to enable this court to review what occurred. *Id.*

Clearly, these are precise steps that must be taken by the trial court in making a decision on discrimination in the jury-selection process, whether it be racial discrimination or gender discrimination. None of that was done by the trial court in this case. In fact, the issue was never considered because there was no authority for it. Now for the first time this court has decided that a gender violation did occur and has summarily granted a new trial. In doing so the majority (1) has not engaged in a *Batson/J.E.B.* analysis, and (2) has usurped the jurisdiction of the trial court. Furthermore, this decision runs counter to a decision by the Eighth Circuit Court of Appeals, which, of course, is not binding on this court, but also to decisions by this court. *See Reynolds* v. *City of Little Rock*, 893 F.2d 1004 (8th Cir. 1990), *cert. denied*, 501 U.S. 1204 (1991) (remand for *Batson* hearing); *Moore* v. *State*, 303 Ark. 1, 791 S.W.2d 698 (1990) (remand for *Denno* hearing); *Harris* v. *State*, 271 Ark. 568, 609 S.W.2d 48 (1980) (remand for *Denno* hearing).

In *Reynolds*, the Eighth Circuit decided that *Batson* v. *Kentucky*, 476 U.S. 79 (1986), did apply to trials of § 1983 civil rights actions. In remanding the case to the District Court to determine whether a *Batson* violation had occurred, the court stated:

> We therefore vacate the judgment of the District Court insofar as it adopts the position that the City need not explain its peremptory challenges against black jurors. On remand, the District Court should first determine whether plaintiff has made a prima facie case of discrimination. If it finds that a prima facie case has been made out, it should then conduct a hearing pursuant to the evidentiary standards articulated in *Batson*, 476 U.S. at 96-98, 106 S.Ct. at 1722-1723. In the event that the District Court believes that the City's peremptory challenges are racially motivated, it should order a new trial. If the Court finds no racial motivation, the judgment will stand affirmed, sub-

ject, however, to plaintiff's right to appellate review of this finding of fact.

893 F.2d at 1009-1010.

Similarly, this court has held in two cases where *Denno* hearings were warranted, following appeal, that a remand to the trial court was appropriate. *Moore* v. *State, supra; Harris* v. *State, supra.* In each case, we concluded: "A new trial should be ordered only if the trial court finds the statement to have been involuntary." *Moore*, 303 Ark. at 5, 791 S.W.2d at 700; *see also, Harris*, 271 Ark. at 571, 609 S.W.2d at 50.

The majority offers no case law supporting what it is doing, other than a vague reference to the fact that a *Batson/J.E.B.* hearing is difficult two years after the trial and that judicial economy supports the decision. Those considerations do not justify an erroneous exercise of jurisdiction. Though Cleveland argues that this court has made *Batson* decisions before, we have never done so when the trial court had never considered the issue. The State should certainly have an opportunity to comment on whether it engaged in purposeful discrimination. It is worth noting that the original jury that heard the Cleveland case was comprised of five women. *See Cleveland* v. *State*, 315 Ark. 91, 865 S.W.2d 285 (1993).

I would reverse this case and remand it to the trial court for a decision under *J.E.B.* v. *Alabama*, 511 U.S. ___, 114 S.Ct. 1419 (1994).

HAYS, J., joins.