Mary BOSQUET *v.* STATE of Arkansas

CA CR 92-89 953 S.W.2d 894

Court of Appeals of Arkansas
Divisions I and IV
Opinion delivered October 8, 1997
[Petition for rehearing denied November 12, 1997.]

*Jeff Rosenzweig*, for appellant.

*Winston Bryant*, Att'y Gen., by: *Kelly Terry*, Asst. Att'y Gen., for appellee.

JUDITH ROGERS, Judge. The appellant, Mary Bousquet, was convicted in a jury trial of two counts of delivering a controlled substance (cocaine), for which she was sentenced to consecutive terms of fifteen years in prison.[1] She contends on appeal that the trial court erred in allowing the State to exercise its peremptory challenges to exclude black persons in violation of *Batson v. Kentucky*, 476 U.S. 79 (1986). We find no merit in her argument and affirm.

As an initial matter, we note that the "venerable practice" of peremptory challenges is designed to promote the goal of fairness in jury trials. *Sonny v. Balch Motor Co.*, 328 Ark. 321, 944 S.W.2d 87 (1997) (*citing Holland v. Illinois*, 493 U.S. 474 (1990)). It is a custom which dates back beyond the founding of the Republic to origins in the common law. *Id.* The historical practice of allowing a litigant to strike jurors for any reason came into being for the purpose of fostering both the perception and the reality of an impartial jury. *Id.* However, the exercise of peremptory challenges is not without qualification. In *Batson, supra*, the United States Supreme Court held that the Equal Protection Clause of the United States Constitution forbids a prosecutor in a criminal case to use his or her peremptory challenges to exclude jurors solely on the basis of race. *Id.* at 84. This prohibition has been extended to litigants in private matters as well. *Edmonson v. Leesville Concrete Co., Inc.*, 500 U.S. 614 (1991).

Under *Batson* jurisprudence, as recently enunciated by the Court in *Purkett v. Elem*, 514 U.S. 765 (1995), once the opponent of a peremptory challenge has made out a prima facie case of racial discrimination (step one), the burden of production shifts to

---

[1] Appellant's conviction occurred in 1991. However, in 1992, we dismissed her direct appeal for failure to prosecute. In 1996, appellant retained new counsel and sought reinstatement of her appeal. We granted that request on November 27, 1996.

the proponent of the strike to come forward with a race-neutral explanation (step two). If a race-neutral explanation is tendered, the trial court must then decide (step three) whether the opponent of the strike has proved purposeful discrimination.[2] In *Purkett*, the Court restated the principle that the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike.

██ ██ Our courts have adhered to the guidelines prescribed by the Supreme Court and have developed specific procedures to be followed when considering a *Batson* challenge. *Sonny v. Balch Motor Co., supra.* As was reiterated by the court in *Wooten v. State*, 325 Ark. 510, 931 S.W.2d 408 (1996), *cert. denied* 117 S.Ct. 979 (1997):

> First, the defendant must make a prima facie case that racial discrimination is the basis of a juror challenge. In the event that the defendant makes a prima facie case, the State has the burden of showing that the challenge was not based upon race. Only if the defendant makes a prima facie case and the State fails to give a racially neutral reason for the challenge is the court required to conduct a sensitive inquiry.

*Id.* at 514, 931 S.W.2d at 410 (*quoting Mitchell v. State*, 323 Ark. 116, 913 S.W.2d 264 (1996). The standard of review for reversal of a trial court's *Batson* ruling is whether the trial court's findings are clearly against the preponderance of the evidence. *Prowell v. State*, 324 Ark. 335, 921 S.W.2d 585 (1996).

Appellant is an African-American. At trial, she raised *Batson* objections to the State's use of peremptory challenges to exclude four African-Americans from the jury. The first objection came when the State struck prospective juror John Johnson. The prosecutor explained that this juror was excluded because he was fidgety, refused to make eye contact with him, and seemed to be

---

[2] Appellant raises the issue that we must apply the law of *Batson* as it existed at the time of her trial in 1991. We reject that argument as it is contrary to the decision in *Griffith v. Kentucky*, 479 U.S. 314, 328 (1987), where the Court specifically addressed the retroactivity of its ruling in *Batson* and held that "a new rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final."

uncomfortable and inattentive. The prosecutor further stated that Mr. Johnson "looked away when asked if he agreed with the law against selling cocaine. I interpreted that to be possibly some hesitancy on his part." The court found that the prosecution had stated a race-neutral reason for the exclusion of this juror and overruled appellant's objection, noting that one African-American had been seated and that the State had not used its remaining strikes to exclude that juror.

The second objection was made when the State used a strike to eliminate Peter Ware from the jury. The prosecutor responded to the motion by saying:

> [t]he juror on the questionnaire gives his age 25. He says, Education, and next to that he says "general, plus 41 hours." I don't know any other juror that I've seen a questionnaire where that answer seems to be so unresponsive. I don't know what "general, plus 41 hrs.," meaning hours, means. Secondly, on the line where its says "number of children," this defendant, this juror, excuse me, has drawn a, what I would call a "smiley face," which consists of a circle with a little smiley face therein, similar to those types of faces which are on those little stickers which previously might have said, "Have a nice day." The fact that this juror has filled out this questionnaire in what I consider to be a very cavalier fashion, also the fact that his occupation being a waiter and cook at Shug's Riverhouse, and he's a 25 year old person, indicates to me, Your Honor, that this juror does not take this particular exercise very seriously, nor is he the type of person who, when asked questions, responds in a reasonable manner. I would conclude from that that this juror is not the type of person that I want on this jury where he could listen to certain testimony and make decisions and make responses in his own mind that would be reasonable. Secondly, when I sat down with Ms. Fowler, who is a deputy prosecuting attorney, about this questionnaire which I saw, Ms. Fowler looked at me and said, "You know, because all during your *voir dire* this juror stared at me and never quit staring." And, Your honor, based on that, it has absolutely nothing to do with the fact that this is a black person. And the court would recall that just on these last people who were called there was a black female, probably close to the age of this defendant which was, who was looking at me all during the *voir dire*, was answering questions by nodding yes or no like the other jurors

were, and there was, I have no problem with that because of her race. But I do have a problem with this juror because of the questionnaire and that I because of what Ms. Fowler said that this person never looked at me once when I was asking him questions.

The trial court accepted the State's explanation as being racially neutral and overruled appellant's objection, observing that the State had not used one of its remaining strikes to exclude another black juror in the group and that there were currently two black persons who had been selected for service on the jury.

Appellant's third objection was made when the State excluded juror Ruth King. In explaining the exclusion of Ms. King, the prosecutor stated that she had been the foreperson of the jury on a previous drug-related case that had resulted in a hung jury. He said that he had been surprised by that outcome because the case was a strong one where police officers had seen the defendant dispose of cocaine as they approached him. He recalled that Ms. King seemed hostile to him during closing arguments in that case, and he had learned that she had voted to acquit. He also pointed out that he had used a peremptory challenge to exclude from this jury a white person, Kathy Bolan, who had sat on the hung jury with Ms. King and had also voted to acquit.

The final objection was raised to the State's use of a strike against juror James Bledsoe. In response to the objection, the prosecutor explained that Mr. Bledsoe had sat on the same hung jury with Ms. King and Ms. Bolan and that he, too, had voted to acquit. The prosecutor further stated that Mr. Bledsoe had seemed antagonistic toward him in the previous case, which pitted the credibility of the police against that of the defendant. He felt that Mr. Bledsoe bore hostility toward the police. The court accepted the State's explanation as being race-neutral and over-ruled appellant's objection. The court observed that the previous case and the case at bar both involved narcotics and the credibility of the police and that the State had struck a white juror for the same reason.

At the conclusion of *voir dire*, the court stated:

In order to complete the record on the *Batson* objections, I would note that there are three black jurors seated on this current jury, namely Mrs. Laura Montgomery, Mrs. Catherine Burns, and Mrs. Geneva Higgins. Two of these black jurors were seated and accepted while the State still had strikes remaining and could have struck them. As one court put it, this is not a monochromatic jury. The percentage or proportion of the jurors on this jury, on the seated jury, exceeds the racial make-up of this community, which, I understand, is less than 20%, about 16%.

## Prima Facie Case

A *prima facie* case may be established by: (1) showing that the totality of relevant facts gives rise to an inference of discriminatory purpose; (2) demonstrating total or seriously disproportionate exclusion of blacks from the jury; or (3) showing a pattern of strikes, questions, or statements by a prosecuting attorney during *voir dire* suggesting racial motivation. *Cooper v. State*, 324 Ark. 135, 919 S.W.2d 205 (1996). In the case at hand, the trial court asked the prosecutor to enunciate his reasons for the strikes immediately after each objection was made. In this situation, once a prosecutor has offered a race-neutral explanation for the peremptory challenges and the trial court has ruled on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a *prima facie* showing becomes moot. *Prowell v. State, supra; see also Cleveland v. State*, 326 Ark. 46, 930 S.W.2d 316 (1996). Consequently, we will assume the existence of a *prima facie* case for purposes of our review.

## Race-Neutral Explanations

According to the decision in *Purkett v. Elem, supra*, at this stage of the analysis the proponent of a peremptory challenge is not required to offer an explanation that is either plausible or persuasive. The issue is the facial validity of the prosecutor's explanation; it must be a reason that does not implicate the denial of equal protection. Unless discriminatory intent is inherent in the State's explanation, the reason offered is to be considered race-neutral. In *Purkett*, the explanation offered for excusing the juror

was that he had long, unkempt hair, as well as a mustache and beard. The Court held that the explanation was race–neutral in that shagginess and the wearing of facial hair is not peculiar to any race.

Here, although the appellant presents no direct challenge to the trial court's findings that the reasons offered by the State were race–neutral, we have no hesitancy in concluding that they were. None of the reasons advanced are peculiarly associated with race, and we can discern no discriminatory intent inherent in the prosecutor's explanations. *See e.g., Hugh Chalmers Chevrolet-Cadillac-Toyota, Inc. v. Lang*, 55 Ark. App. 26, 928 S.W.2d 808 (1996). A juror's hesitancy to follow the law has been accepted as a race–neutral explanation, *Bell v. State*, 324 Ark. 258, 920 S.W.2d 821 (1996), as well as a prosecutor's feeling that he "had gotten some mixed signals about what [a prospective juror] would require in terms of the State's proof." *Sims v. State*, 320 Ark. 528, 900 S.W.2d 508 (1995). Striking a juror for the reason that the juror had been on a jury that had acquitted a criminal defendant has been accepted as a race–neutral explanation. *Rockett v. State*, 318 Ark. 831, 890 S.W.2d 235 (1994). Also, our supreme court has recognized that challenges based on a juror's age, demeanor during *voir dire*, and employment background are acceptable as race–neutral explanations. *Sonny v. Balch Motor Co., supra*. The trial court's findings concerning the racial neutrality of the State's explanations are not clearly against the preponderance of the evidence.

### Discriminatory Intent

Appellant's argument for reversal is directed toward this stage of the inquiry. She argues that the reasons offered by the State for excluding these jurors were merely a pretext for racial discrimination. At this juncture, the persuasiveness of the State's reasons becomes relevant in determining whether the opponent of the strike has carried her burden of proving purposeful discrimination. *Purkett v. Elem, supra*. The trial court must consider the evidence and explanations presented along with its observations of the proceedings to determine whether the neutral explanations given are genuine or pretextual. *Sonny v. Balch*

*Motor Co., supra.* Our standard of review affords great deference to the trial court's exercise of discretion in determining discriminatory intent relating to the use of a peremptory strike. This is so because the question turns largely on the issue of credibility, and the trial court is in a superior position to judge the truthfulness of the prosecutor's explanation with respect to the demeanor of the juror involved. *Id.*

The trial court in this instance considered the overall facts and circumstances and found the prosecutor's explanations to be persuasive. In finding the absence of discriminatory intent, the court observed that the first two jurors in question were struck at a time when black persons had been seated on the jury, even though the State had strikes available which it could have used to remove them. The court also found that the remaining jurors were struck for the same reason that a white person was excluded. The court further found that there were three black persons seated on the jury and that the percentage of black persons on the jury exceeded that found in the community.

 It has been said that a prosecutor's failure to apply a stated reason for striking black jurors to similarly situated white jurors may evince a pretext for excluding jurors solely on the basis of race. *Ford v. Norris*, 67 F.3d 162 (8th Cir. 1995). We think the converse is equally true – that the exclusion of a white juror for the same reason that black jurors are excluded may indicate the lack of discriminatory intent. Also, the non-use of available peremptory strikes to exclude black persons from a jury is considered cogent evidence indicating the absence of discriminatory motivation. *See e.g. Cleveland v. State, supra*; *Watson v. State*, 318 Ark. 603, 887 S.W.2d 518 (1994); *Tucker v. State*, 313 Ark. 624, 855 S.W.2d 948 (1993). And, the presence of minority members on the jury, while by no means determinative, is significant. *Cooper v. State, supra*. When these elements are combined with the explanations given by the prosecutor, we cannot say that the trial court's finding is clearly against the preponderance of the evidence. Therefore, we must reject appellant's contention that the reasons offered by the State were pretextual.

 With all due respect for the dissenting judge's opinion, it is one that exceeds the bounds of the argument raised on appeal. The appellant does not contend that the trial court failed to adequately delve into the reasons asserted by the State for its exercise of the strikes. It is appellant's sole contention that the reasons, based on this record, were pretextual and that the trial court's finding to the contrary is clearly erroneous. Under long-standing procedure, this court is to consider only the arguments raised by the parties, and we are not to consider reversing a trial court for unargued reasons. *Hancock v. First Stuttgart Bank*, 53 Ark. App. 150, 920 S.W.2d 36 (1996). By confining ourselves to the arguments that are raised, we are striving to avoid the mistaken role of being a "super trial court" or an advocate of one party to the appeal. That is not our function as an appellate court. In sum, when we examine the facts and circumstances surrounding the exercise of the strikes and give due deference to the trial court's superior position to evaluate the prosecutor's responses, we are in no position to say that the explanations given were so fantastic or implausible as to compel a conclusion of improper discriminatory intent.

Affirmed.

NEAL, PITTMAN, AREY, and CRABTREE, JJ., agree.

GRIFFEN, J., dissents.

WENDELL L. GRIFFEN, Judge, dissenting.

*PRETEXT (n.) A reason put forward to conceal one's true reason.*

*TRUE (adj.)*
*1. In accordance with fact.*
*2. In accordance with correct principles or an accepted standard, rightly so called, genuine and not false.*
 OXFORD AMERICAN DICTIONARY 528, 738 (1980)

*[T]he trial court in this case had a duty to do more than accept without comment, inquiry, or finding of fact the prosecutor's explanation. To say that such an explanation, or any other explanation, may be regarded as sufficient without any judicial inquiry makes a mockery of the Batson decision . . . . Surely any prosecutor can offer neutral reasons . . . .*

*Colbert v. State*, 304 Ark. 250, 257, 801 S.W.2d 643 (1990) (Newbern, J., concurring).

The majority opinion shows that trial courts in Arkansas are not obligated to conduct any inquiry concerning the genuineness of racially neutral explanations offered after people of color have been peremptorily excluded from jury service. Arkansas follows this approach despite the promise in *Batson v. Kentucky*, 476 U.S. 79 (1986), that, in deciding if a party has carried her burden of persuasion of intentional race discrimination by the way that an opponent peremptorily excludes minority group members from jury service, "a court *must* undertake a 'sensitive inquiry' into such circumstantial and direct evidence of intent as may be available." *Id.* 476 U.S. at 93 (emphasis added). I respectfully dissent.

The State exercised peremptory challenges to exclude four African-Americans in appellant's trial. John Johnson and Peter A. Ware were struck without questioning. Ruth King and James Bledsoe were excluded after being questioned. The prosecutor used four of his five peremptory challenges to strike African-Americans. Three other African-Americans were part of the jury.

The prosecutor contended that John Johnson was "fidgety," and that Johnson did not make eye contact during voir dire. He asserted that Peter Ware's answer on a juror questionnaire was unresponsive when it indicated that his education was "general, plus 41 hours," and that Ware's answer was unresponsive concerning whether he had children when it contained a zero with a "smiley face." The prosecutor also stated concerning Ware:

> The fact that his occupation being waiter and cook at Shug's River House, and he a (sic) 25 year-old person, indicates to me, Your Honor, that this juror does not take this particular exercise very seriously, nor is he the type of person who, when asked questions, responds in a reasonable manner. . . . Secondly, when I sat down and I began to tell Ms. Fowler, who is a deputy prosecuting attorney, about this questionnaire which I saw, Ms. Fowler looked at me and said, "You know, because all during your voir dire this juror stared at me and never quit staring."

The prosecutor explained that he peremptorily challenged King and Bledsoe because King had been the foreperson and Bledsoe had served in another drug case that resulted in a hung jury (six votes for conviction and six votes to acquit).

The trial judge simply "accepted" the prosecutor's reasons for exercising the peremptory challenges as racially neutral. Despite argument by appellant's trial counsel (appellant is represented by different counsel on appeal) that the prosecutor's reasons were "simply a pretext for the impermissible use of the peremptory challenge," the trial court made no effort to determine the genuineness of the racially neutral explanations, and it made no findings for us to review on that critical issue. Rather, the trial judge stated as to John Johnson:

> All right. The State has stated a racially neutral reason, which this Court accepts based upon the overall circumstances of this case, including the fact that there was—that the State did not strike a black juror for which it had an opportunity to strike, namely Mrs. Geneva Higgins.
> I notice that Mrs. Higgins has been here on several other occasions. But, based upon that, the overall circumstances of the case, I accept that as a racially neutral reason as has been previously accepted in other cases, even other cases out of this Court. So not regarding the untimeliness of the motion, this Court would not — would have overruled the *Batson* objection in any event.
> As to Ware, the trial judge stated:
> The Court accepts the State's explanation as being racially neutral, and based in (sic) the obvious evidence in this case, I would note that also at this point the State has several challenges left. . . . There are now two black jurors seated on this jury that the defense, I mean that the State could have struck because they had peremptory challenges available to them, and so motion, your objection based upon *Batson v. Kentucky* is denied.

As to Ruth King, the trial court stated concerning appellant's *Batson* objection:

> The Court finds that [King's vote to acquit in a different case] to be a racially neutral and acceptable reason in this matter, and so your motion is overruled, Sir.

The court's ruling as to James Bledsoe was as follows:

The fact that the State has stated that Mr. Bledsoe sat on the same jury with Mrs. King and Mrs. Bolan [a white person also peremptorily challenged], which they have also struck, Mrs. Bolan being white, and Mrs. King and Mr. Bledsoe being black, that is a racially neutral reason that has been accepted in other cases, the fact that they have sat on hung juries. They have also struck a white for the same reason that they say was on the same jury, and it is their information that these folks also voted against them somehow. But, they say that other reasons against Mr. Bledsoe, the statement that they have previously sat on juries which did not reach a verdict, and feeling that they were a cause of it, and because it is a similar case involving narcotics, and it was undercover agents versus other persons. In other words, the same or similar circumstances the Court feels that that's a racially neutral reason, and your motion will be overruled.

However, *Batson v. Kentucky* and other cases clearly require that trial courts do more than "accept" a prosecutor's racially-neutral explanations for using peremptory challenges to exclude persons of color from jury service. The Supreme Court observed in *Batson* that trial courts must undertake a "sensitive inquiry" into available circumstantial and direct evidence of discriminatory intent in deciding if a criminal defendant has carried the burden of persuasion on the discrimination claim. *Batson*, 476 U.S. at 93. The Court recognized that using peremptory challenges to exclude persons of color from jury service violates the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States. As Justice Powell stated in the majority opinion:

Although a prosecutor ordinarily is entitled to exercise permitted peremptory challenges "for any reason at all, as long as that reason is related to his view concerning the outcome" of the case to be tried, the Equal Protection Clause forbids the prosecutor to challenge potential jurors solely on account of their race or on the assumption that black jurors as a group will be unable impartially to consider the State's case against a black defendant.

*Batson, supra,* 476 U.S. at 89 (citations omitted).

The decisions in *Ward v. State*, 293 Ark. 88, 733 S.W.2d 728 (1987), and *Mitchell v. State*, 295 Ark. 341, 750 S.W.2d 936 (1988), show that the Arkansas Supreme Court once followed the

*Batson* standard by requiring that trial judges conduct a "sensitive inquiry" aimed at evaluating the genuineness and sufficiency of a prosecutor's racially neutral explanations for using peremptory challenges to exclude persons of color from jury service. In *Ward*, the supreme court reversed and remanded Ronald Ward's convictions and death sentences for murdering three people. The prosecutor exercised all eight of his peremptory challenges to strike African-Americans from the jury, but the trial court failed to rule on the prosecutor's race-neutral explanations. Our supreme court relied on *Batson v. Kentucky* and the requirement that a trial judge undertake a "sensitive inquiry" into the direct and circumstantial evidence available to decide if the prosecutor's racially neutral explanations were genuine. *Ward,* at 93, 733 S.W.2d at 730.

A year later the supreme court reversed and remanded Lonnie Mitchell's convictions for kidnapping, rape, and battery for which he had received separate life sentences on the kidnapping and rape convictions, and thirty years' imprisonment on the battery conviction. *Mitchell, supra.* In that case the prosecutor peremptorily struck the only African-American from the jury and explained that the black juror was struck because the prosecutor doubted his truthfulness and candor in responding to direct questions during voir dire. Writing for the court, Justice Newbern stated:

> Mitchell made a prima facie case of discrimination in the prosecution's use of its peremptory challenge to remove the only black prospective juror after questioning him closely on whether his race would affect his vote. Absent inquiry by the court, we have before us no factual determination whether the prosecutor was assuming Mr. Petty could not withstand the racial pressures and thus assuming he could not have been answering truthfully on that subject. *The court has a duty to go beyond the prosecutor's explanation and make a "sincere and reasoned" effort to evaluate its genuineness and sufficiency "in the light of all the circumstances of the trial."*
>
> . . .
>
> *Because the trial court accepted the prosecutor's explanation at face value and made no inquiry, we need not consider the explanation's validity to decide this case. We must note, however, that the explanation was one*

> which could have been given with respect to any venire person and could
> be used to screen improper motive.

*Mitchell v. State*, 295 Ark. at 348-49, 750 S.W.2d at 940 (emphasis added, citations omitted).

However, since 1990, Arkansas has followed the procedure that when a racially neutral explanation is offered (step 2), the trial court must then merely determine from all relevant circumstances whether the racially neutral explanation is sufficient. *Colbert v. State*, 304 Ark. 250, 801 S.W.2d 643 (1990). In *Colbert*, our supreme court reversed and remanded a conviction for delivery of a controlled substance — rock cocaine — and a sentence of life imprisonment and fine of $25,000, because a trial judge failed to rule on the sufficiency or insufficiency of racially neutral explanations offered by a prosecutor who struck two black members of the venire, leaving the defendant to be tried by an all-white jury. The court focused on whether the trial judge should have ruled on whether the prosecutor's explanation for excluding the black venire persons was sufficient to be racially neutral, as the following excerpt from the majority opinion demonstrates:

> We could infer from the fact that the trial proceeded without any
> action being taken that the court accepted as sufficient the prose-
> cutor's "racially neutral" explanation, and we could then discuss
> whether we agree or disagree with the trial court that the reasons
> given by the state were sufficient to satisfy the issue raised by the
> appellant. Under our previous holdings, however, even if the
> state's explanation satisfied the trial court, the court was still
> required to make a sensitive inquiry to eliminate any possibility of
> racial bias. *See Mitchell v. State*, 295 Ark. 341, 750 S.W.2d 936
> (1988).
>
> . . .
>
> We now hold that upon a showing by a defendant of circum-
> stances which raise an inference that the prosecutor exercised one
> or more of his peremptory challenges to exclude venire persons
> from the jury on account of race, the burden then shifts to the
> State to establish that the peremptory strike(s) were for racially
> neutral reasons. *The trial court shall then determine from all relevant
> circumstances the sufficiency of the racially neutral explanation. If the*

> *State's explanation appears insufficient, the trial court must then conduct a sensitive inquiry into the basis for each of the challenges by the State.*
>
> The standard of review for reversal of the trial court's evaluation of the sufficiency of the explanation must test whether the court's findings are clearly against a preponderance of the evidence. *In every instance, however, the court shall state, in response to the defendant's objection, its ruling as to the sufficiency or insufficiency of the racially neutral explanation provided by the State.*

*Colbert* at 254-55, 801 S.W.2d at 645-46 (emphasis added). In a separate concurring opinion, joined by Justices Dudley and Glaze, Justice Newbern agreed that the racially neutral explanations given by the prosecutor were "thin," and that reversal was justified because the trial court did not conduct the "sensitive inquiry" prescribed in *Batson*. However, Justice Newbern objected that the majority opinion had gone "out of its way to strike with crippling blows" the opinions in *Ward* and *Mitchell*, stating:

> This case is a good example of the kind in which the requirement for a sensitive inquiry by the trial court is proper, and it is a good example to show why it is required.
>
> While the defendant may have an overall burden of proof on the issue of discrimination in the selection of jurors, I believe it is clear, and the majority opinion here recognizes, that once the prima facie display has been brought to the court's attention, the burden of going forward with the evidence clearly shifts to the prosecution. When a pattern or other evidence of discrimination, either in the case at hand, or historically, appears, the defendant has demonstrated the need for a factual inquiry . . .
>
> *The majority opinion recognizes that the trial court in this case had a duty to do more than accept without comment, inquiry, or finding of fact the prosecutor's explanation. To say that such an explanation, or any other explanation, may be regarded as sufficient without any judicial inquiry makes a mockery of the essence of the Batson decision.*
>
> Had the trial court inquired behind the prosecution's racially neutral explanations, we would probably not have this issue before us. While I agree with the majority opinion that the explanations appear to be "thin," given other factors in the record, I am not certain that they might not have been wholly racially neutral. The problem is that the trial court, despite his much better position than ours for doing so, did not attempt to find out. Surely any prosecutor can offer neutral reasons . . . .

*Colbert* at 257, 801 S.W.2d at 647 (emphasis added).

Since *Colbert*, our supreme court has held that *Batson* challenges do not require a trial court to undertake a "sensitive inquiry" into the genuineness of racially neutral explanations offered when black members of a venire are peremptorily excluded where it has found the racially neutral explanations "sufficient." *See Sonny v. Balch Motor Co.*, 328 Ark. 321, 944 S.W.2d 87 (1997); *Wooten v. State*, 325 Ark. 510, 931 S.W.2d 408 (1996); *Prowell v. State*, 324 Ark. 335, 921 S.W.2d 585 (1996); and *Hollamon v. State*, 312 Ark. 48, 846 S.W.2d 663 (1993).

However, in *Purkett v. Elem*, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995), the United States Supreme Court issued a per curiam opinion that explains when the plausibility of racially neutral explanations should be examined:

> Under our *Batson* jurisprudence, once the opponent of a peremptory challenge has made out a prima facie case of racial discrimination (step 1), the burden of production shifts to the proponent of the strike to come forth with a race-neutral explanation (step 2). *If a race-neutral explanation is tendered, the trial court must then decide (step 3) whether the opponent of the strike has proved purposeful racial discrimination.* . . . The second step of this process does not demand an explanation that is persuasive, or even plausible. "At this [second] step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral. . . .
> *It is not until the third step that the persuasiveness of the justification becomes relevant — the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination. At that stage, implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination.*

*Id.*, 131 L.Ed.2d at 839 (citations omitted, emphasis added).

Thus, *Batson* and *Purkett* show that trial judges *must* make explicit findings about the sufficiency *and genuineness* of the racially neutral explanations given by parties whose peremptory challenges raise *prima facie* claims of race discrimination. *Purkett* shows that trial courts are obligated to scrutinize racially neutral explanations for genuineness — not mere sufficiency — as part of the third step

of the *Batson* analytical process, and before deciding if the *Batson* movant has met her burden of proving intentional race discrimination by a preponderance of the evidence. That position is simply consistent with the Supreme Court's requirement in *Batson* that trial courts undertake a "sensitive inquiry" into the available evidence regarding a prosecutor's allegedly discriminatory intent before deciding if a *Batson* movant has carried her burden of persuasion.

### The Effect of Failing to Undertake a "Sensitive Inquiry" Regarding Genuineness of Racially Neutral Explanations

Here the trial court undertook no inquiry, sensitive or otherwise, designed to assess the genuineness of the prosecutor's racially neutral explanations. It made no findings about the genuineness of the racially neutral explanations. Had the trial court conducted the required "sensitive inquiry" and made findings, then we could review the totality of the circumstances surrounding each challenge and the racially neutral explanations to decide appellant's claim that the trial court's *Batson* rulings are clearly against the preponderance of the evidence. But without the requisite inquiry and findings mandated by *Batson* and *Purkett*, we have nothing to review on the crucial pretext question that is central to deciding whether discriminatory purpose has been established under equal protection analysis. *See Washington v. Davis*, 426 U.S. 229 (1976).

Like the situations in *Ward* and *Mitchell*, the trial court in this case "accepted" the prosecutor's explanations for peremptorily challenging Johnson, Ware, King, and Bledsoe at face value, did not "go beyond the prosecutor's explanation," and failed to make "a 'sincere and reasoned' effort to evaluate [their] genuineness and sufficiency 'in the light of all the circumstances of the trial.'" *Mitchell v. State, supra*, 295 Ark. at 348, 750 S.W.2d at 940. As in *Mitchell*, the prosecutor's racially neutral explanations for excluding Johnson, Ware, King, and Bledsoe could have been given to screen a discriminatory motive. But without the "sensitive inquiry" mentioned in *Batson* that *Purkett* held proper at the third step of the *Batson* process, the trial court could not possibly have found that the prosecutor's explanations withstood pretext scrutiny and were genuine.

Merely because a jury includes one or more members of a racial minority does not mean that racially neutral explanations for excluding others are genuine. Yet, in ruling on appellant's *Batson* objections, the trial court repeatedly mentioned that the prosecutor had not struck other African-Americans. The Fourteenth Amendment's equal protection guarantee, as *Batson* and *Purkett* show, means that whenever a prosecutor presents a race-neutral explanation for peremptorily excluding a person of color from the jury within the context of a *Batson* challenge, then a trial judge must make findings concerning the explanation based upon a "sensitive inquiry" into its genuineness. That duty does not depend on whether there are other persons of color seated on the jury. The United States Supreme Court recognized this truth in *Batson* when it stated:

> "A single invidiously discriminatory governmental act" is not "immunized by the absence of such discrimination in the making of other comparable decisions." For evidentiary requirements to dictate that "several must suffer discrimination" before one could object would be inconsistent with the promise of equal protection to all.

*Id.* at 95–96 (quoting *Arlington Heights v. Metropolitan Hous. Dev. Corp.*, 429 U.S. 252, 266 (1977), and *McCray v. New York*, 461 U.S. 961, 965 (1983)) (Marshall, J., dissenting from denial of certiorari). Equal protection for all requires equal protection for everyone.

Justice Newbern was right in *Colbert, supra,* that "any prosecutor can offer neutral reasons" for exercising peremptory challenges. That is why trial judges must, under *Batson* and *Purkett*, "distinguish bona fide reasons for such peremptories from sham excuses belatedly contrived to avoid admitting acts of [race] discrimination." *People v. Wheeler*, 22 Cal.3d 258, 282, 148 Cal. Rptr. 890, 583 P.2d 748 (1978). The "sensitive inquiry" required by *Batson* and *Purkett* obligates trial courts to inspect racially neutral explanations and determine if they are genuine, or simply shams offered to conceal discriminatory intent contrary to the constitutional guarantee of equal protection for every litigant and every potential juror.

Race discrimination in the "venerable" practice of peremptory challenges was legal for almost 370 years before *Batson* was decided in 1986. It has hidden behind racially neutral explanations for barely more than a decade. Given the widespread and longstanding practice of peremptorily eliminating persons of color from juries, it is both unrealistic and unreasonable to expect that prosecutors who articulate racially neutral explanations for exercising peremptory challenges will not do so to conceal discriminatory intent. Justice Thurgood Marshall addressed this reality in his concurring opinion in *Batson* as follows:

> Any prosecutor can easily assert facially neutral reasons for striking a juror . . . Nor is outright prevarication by prosecutors the only danger here. "[I]t is even possible that an attorney may lie to himself in an effort to convince himself that his motives are legal." A prosecutor's own conscious or unconscious racism may lead him easily to the conclusion that a prospective black juror is "sullen," or "distant," a characterization that would not have come to his mind if a white juror had acted identically. A judge's own conscious or unconscious racism may lead him to accept such an explanation as well supported . . . . [P]rosecutors' peremptories are based on their "seat-of-the-pants instincts" as to how particular jurors will vote. Yet "seat-of-the-pants instincts" may often be just another term for racial prejudice.

*Batson, supra,* 476 U.S. at 106 (quoting *King v. County of Nassau,* 581 F.Supp. 493, 502 (E.D. NY. 1984)(citations omitted).

Discriminatory intent will seldom be apparent. Trial judges are not clairvoyant. Therefore, the "sensitive inquiry" that *Batson* and *Purkett* command is vital to ensure that equal protection is provided every litigant and venire person. When trial judges "go beyond the prosecutor's explanation and make a sincere and reasoned effort to evaluate its genuineness and sufficiency in the light of all the circumstances of the trial," *Mitchell v. State, supra,* they are more likely to uncover a sham than by blindly accepting the prosecutor's explanation at face value. "[S]eek and ye shall find," (Luke 9:11) is as valid regarding discriminatory intent and pretext as it is for moral truth. Likewise, those who look for nothing usually find it.

Had the trial judge conducted a "sensitive inquiry" aimed at evaluating the genuineness of the prosecutor's racially neutral reasons for peremptorily challenging Johnson, Ware, King, and Bledsoe, he could have asked the prosecutor to explain why he determined Ware to be "unresponsive" about his education and parental status, especially after failing to question Ware during voir dire. The prosecutor could have been asked why Ware's occupation as a restaurant cook and waiter suggested that he did not consider jury service "seriously," particularly when the prosecutor did not challenge John Yates, a white man who worked as a stocker for Sam's Wholesale. Why was the way that Ware looked at the deputy prosecutor so different from the way that other persons in the venire looked at her that Ware was unlikely to be fair and impartial? If Ware was "staring" at the deputy prosecutor rather than paying attention, why didn't the lead prosecutor notice it? Why were King and Bledsoe deemed unfit to fairly and impartially weigh the evidence and apply jury instructions based on their service on an evenly divided jury that had disagreed on whether the prosecution met its burden of proof in a previous and unrelated drug case? The trial judge could have compared his assessment of Johnson's attentiveness during voir dire with the prosecutor's claim that Johnson was "fidgety" and inattentive. These questions, by no means exhaustive, illustrate the type of inquiry that the trial court should have undertaken under the *Batson* and *Purkett* holdings to decide whether the prosecutor's racially neutral explanations were genuine or merely pretexts made to mask discriminatory intent. The prosecutor's responses to these questions would have not only provided the trial judge with the information needed to determine if the racially neutral explanations were pretextual, but they would have also been part of the total record for appellate review of the trial court's findings on the pretext issue. It is regrettable that this type of inquiry is no longer deemed necessary or worthwhile in Arkansas.

Frederick Douglass once said, "There is no Negro problem. The problem is whether the American people have loyalty enough, honor enough, patriotism enough, to live up to their own Constitution . . . ." His words ring painfully true as one considers the references to the "venerable" practice of peremptory

challenges in the majority opinion. Judging from those references, one would think that the peremptory challenge is part of our fundamental rights and equal protection a lesser thing. When one considers that the reverse is the case, then Douglass's words not only ring true, they bring to mind the words of Stephen Vincent Benét, who wrote, "The loves we had were far too small."

Despite *Batson's* requirement for a "sensitive inquiry," peremptory challenges in Arkansas can now exclude persons of color from jury service, and *Batson* objections will be overruled, without inquiries and findings concerning whether implausible, fantastic, superstitious or otherwise racially neutral explanations are merely pretexts for discriminatory intent. *Batson* and *Purkett* show that the equal protection guarantee demands much more than that. At a minimum, the equal protection guarantee, forged into our fundamental notion of rights after 250 years of slavery and another 120 years of legalized discrimination, demands that claims of discriminatory motive in exercising peremptory challenges not be trivialized.

I respectfully dissent.