Stephanie Scott BURNETT *v.* STATE of Arkansas

CA CR 99-1403 27 S.W.3d 454

Court of Appeals of Arkansas
Division I
Opinion delivered October 4, 2000

*John Joplin*, for appellant.

*Mark Pryor*, Att'y Gen., by: *C. Joseph Cordi, Jr.*, Ass't Att'y Gen., for appellee.

OLLY NEAL, Judge. The appellant, Stephanie Scott Burnett, was convicted in a jury trial of delivering a con-

trolled substance (cocaine) and sentenced to ten years in prison. On appeal, Burnett, who is black, contends the trial court erred in allowing the State to exercise one of its peremptory challenges to exclude an African-American from the jury in violation of the Equal Protection Clause as construed by the United States Supreme Court in *Batson v. Kentucky*, 476 U.S. 79 (1986).

▉ ▉ Our courts have developed a three-step process for assessing *Batson* challenges. *Hinkston v. State*, 340 Ark. 530, 10 S.W.3d 906 (2000).

> First, the strike's opponent must present facts to raise an inference of purposeful discrimination; that is, the opponent must present a *prima facie* case of racial discrimination. Second, once the strike's opponent has made a *prima facie* case, the burden shifts to the proponent of the strike to present a race-neutral explanation for the strike. If a race-neutral explanation is given, the inquiry proceeds to the third step, wherein the trial court must decide whether the strike's opponent has proven purposeful discrimination. Here, the strike's opponent must persuade the trial court that the expressed motive of the striking party is not genuine but, rather, is the product of discriminatory intent.

*Id*. at 538–39, 10 S.W.3d at 911–12. (internal citations omitted). Within this three-step process, the opponent of the strike never relinquishes the burden of establishing purposeful discrimination. *MacKintrush v. State*, 334 Ark. 390, 978 S.W.2d 293 (1998). We will not reverse a trial court's finding that a peremptory strike was not exercised based on race unless the finding is clearly against the preponderance of the evidence. *Williams v. State,* 338 Ark. 97, 991 S.W.2d 565 (1999).

During voir dire, the State exercised three of its peremptory strikes to remove African-American venirepersons resulting in an all-white jury. Prior to striking the third African-American, Thurl Willis, the prosecutor asked to approach the bench and stated that he wished to strike Mr. Willis, anticipated a *Batson* challenge, and wished to articulate his reasons for the strike. The prosecutor's stated reason for striking Mr. Willis was because Mr. Willis had been previously arrested for battery. Although there had been no conviction for the battery, further investigation revealed the arrest had been for fighting with a law enforcement officer. Based on Mr. Willis's alleged altercation with a law enforcement officer, the prosecutor stated he had doubts about Mr. Willis's ability to be fair to

the prosecution in a case that would depend heavily on the credibility of undercover police officers who would be testifying at trial.

Burnett argued the prosecutor's reason was pretextual and was being used in an effort to establish an all-white jury. Specifically, she argued Mr. Willis stated during voir dire that he could be fair in judging Burnett's case and believed undercover officers are sometimes necessary to apprehend criminals. Moreover, appellant noted that Mr. Willis served on a jury that returned a guilty verdict only days before. The trial court concluded the prosecutor's explanation was race-neutral and found no discriminatory intent in striking Mr. Willis.

### Prima Facie *Case*

A *prima facie* case may be established by: 1) showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose; 2) demonstrating total or seriously disproportionate exclusion of African-Americans from the jury; or 3) showing a pattern of strikes, questions, or statements by a prosecuting attorney during voir dire suggesting racial motivation. *Bosquet v. State*, 59 Ark. App. 54, 953 S.W.2d 894 (1997). In this case, the prosecution offered a race-neutral explanation for striking Mr. Willis, and the trial court ruled on the ultimate question of intentional discrimination. Once a race-neutral explanation is offered and the trial court rules on the question of intentional discrimination, the issue of whether the defendant has made a *prima facie* case becomes moot. *Prowell v. State*, 324 Ark. 335, 921 S.W.2d 585 (1996).

### *Race-Neutral Explanation*

Once the strike's opponent establishes a *prima facie* case, the burden of producing a racially neutral explanation shifts to the proponent of the strike. *MacKintrush v. State, supra.* The race-neutral explanation must amount to more than a mere denial of discrimination. *Id.* The explanation, however, is not required to be persuasive or plausible. In fact the explanation may be silly or superstitious. *Id.*

Here, we conclude that the reasons offered by the State for striking Mr. Willis, namely his arrest for battery stemming from an alleged altercation with a law enforcement officer, is race-neutral.

Our supreme court has concluded that striking a juror because he has been investigated for criminal activity is an acceptable race-neutral explanation. *Hinkson v. State, supra* (striking a potential juror because he had been investigated for methamphetamine problems although no formal charges were ever filed is racially neutral); *Jackson v. State,* 330 Ark. 126, 954 S.W.2d 894 (1997) (holding a peremptory strike to be racially neutral based on the fact that one of the potential jurors had been in the prosecutor's office "in connec- tion with serious crimes" and had an ex-husband who had been charged with past crimes by the same prosecutor).

*Discriminatory Intent*

■ If the State provides a race-neutral explanation for the strike, the trial court must then decide whether the strike's oppo-nent has proven purposeful discrimination. *MacKintrush v. State, supra.* At this point, it is incumbent upon the strike's opponent to present additional evidence or argument if the challenge is to pro-ceed. *Id.*

■ In this case the appellant presented evidence that Mr. Willis had previously sat on a jury that returned a conviction and during *voir dire* had shown that he would be a fair juror. During *voir dire*, the following exchanges between the prosecutor and Mr. Willis occurred:

> Q: I anticipate the Judge will instruct all of you that you need to set aside any sympathy you have one way or the other and to decide the case solely on the testimony and the evidence, and so my question is, can you set aside any sympathy you may have for one side or the other, any sympathy at all, and decide the case solely on the evidence and the testimony? Can you do that?
>
> A: Yes.
>
> Q: What do you think about law enforcement using under-cover methods, Mr. Willis?
>
> A: They've got to do whatever they've got to do.
>
> Q: Would you agree that it is an important tool that law enforcement has in narcotics investigations?
>
> A: (*Nodding*).

Q: And that would be the only way to catch violators of narcotics laws in the State of Arkansas; would you agree with that?

A: (*Nodding*).

Appellant argues that when the answers Mr. Willis provided are compared with those of white jurors who were not struck from the jury, the prosecutor's discriminatory intent becomes obvious. The answers of two white jurors, Mr. Bates and Ms. Newton, whom the prosecutor did not strike, warrant particular attention. After the prosecutor asked another juror if she believed using undercover methods was the only means of catching violators of narcotics laws, the following colloquy occurred between the prosecutor and Mr. Bates:

Q: How about you, Mr. Bates?

A: No, I don't.

Q: You don't agree with that?

A: No, I don't.

Q: What do you think?

A: I think — I don't believe undercover is the only way to catch a narcotics person. I believe a lot of times it is used unethically.

Q: What would be an example of undercover investigation —

A: — that was unethical because it limits exposure to other witnesses, causes entrapment which I have a problem with a police officer may initiate something and say, you know, "I need this, or do that," or whatever, and they initiate the response. Somebody may be tempted into something for a financial gain or whatever that they may need at that time, and basically starts them down a long road. I believe it is an active tool, but I believe it is very dangerous one.

A similar exchange occurred between the prosecutor and Ms. Newton.

Q: So, you can listen to — Even though they are law enforcement officers, you can listen to their testimony and render a fair and impartial decision?

A: You know, I don't — Not all the time, I wouldn't.

Q: Well, I understand not all the time, but what — Gosh, I'm not sure what you mean by that, not all the time.

A: I mean most of the time they are not right about their decisions and so —

Q: Most of the time they are not right?

A: That's right.

Q: So, law enforcement officers are wrong quite often, I guess?

A: I think they are, yes, sir. I've got grandkids that have been involved in —

Q: In what? Substances?

A: A drug case.

Q: A drug case. Were there narcotics detectives involved?

A: I believe so.

Q: Was it here in Fort Smith?

A: Sure is.

Q: Was it narcotics detectives in Fort Smith Police Department?

A: Sure.

Q: Well, gosh, so you would have a tough time, probably, with narcotics detectives, maybe, here in Fort Smith?

A: Probably would.

Q: You probably would?

A: Yes.

Q: Would you be willing to give less weight to the investigator's testimony?

A: I think so.

Q: You think you would? Okay. That's human nature, and that's based on the experiences you have had with your family members?

A: That's right.

Q: Concerning controlled substances?

A: Yes.

In this third and final step of assessing a *Batson* challenge, the trial court is to consider the evidence and explanations given along with observations of the proceedings to determine whether the explanations provided are genuine or pretextual. *Sonny v. Balch Motor Co.*, 328 Ark. 321, 944 S.W.2d 87 (1997). The appropriate standard in determining pretext is not whether race was the only factor motivating a peremptory strike, but rather, whether race caused the challenged strike. *Murray, v. Groose*, 106 F.3d. 812 (8th Cir. 1997). That is, we ask whether the juror would have been kept but for his race. *Id.*

■ One of the ways pretext can be established is by showing the prosecutor failed to consistently apply stated reasons for striking black jurors to similarly situated white jurors. *See, e.g., Turner v. Marshall*, 121 F.3d 1248 (9th Cir. 1997) (striking black juror because he was uncomfortable viewing gruesome photographs of murder victim was pretextual where prosecutor did not strike white juror who expressed an even greater reluctance to view the photographs); *Jones v. Ryan*, 987 F.2d. 960 (3rd Cir. 1993) (finding pretext where prosecutor exercised peremptory challenges to exclude black jurors with children the same approximate age of the defendant but did not exclude similarly situated white jurors); *Walton v. Caspari*, 916 F.2d 1352 (8th Cir. 1990) (finding pretext where prosecutor struck black jurors because they were nurses or because they had friends or relatives who had been charged with a crime but did not strike white nurses or white venirepersons who had been convicted or charged with a crime); *Garrett v. Morris*, 815 F.2d 509 (8th Cir. 1987) (finding pretext where prosecutor struck black, high-school-educated venirepersons because they lacked education but did not strike white venirepersons who had not completed high school); *Gadson v. Florida*, 561 So.2d 1316 (Fla. 1990) (striking black real estate agent who had previously worked as a teacher was pretextual where prosecutor did not strike a white bank secretary who had previously worked as a seventh-grade teacher); *Illinois v. McDonald,*

530 N.E.2d 1351 (Ill. 1988) (striking black jurors because they were married to teachers was pretext where prosecutor allowed white teacher to remain on jury); *Holmes v. Great Atlantic & Pacific Tea Co.*, 622 So.2d 748 (La. App. 1993) (striking white venirepersons was discriminatory where plaintiff did not exercise peremptory strikes to remove black venirepersons sharing identical characteristics with stricken white jurors); *State v. Oglesby*, 379 S.E.2d 891 (S.C. 1989) (removing black jurors from panel because they were patients of a doctor who would be testifying for the defense was pretextual because prosecutor did not strike a white juror who was also a patient of the doctor).

 Based on the record before us, we conclude that the trial court's ruling was clearly against the preponderance of the evidence. The prosecutor stated his reason for striking Mr. Willis was because "I think the fact that that is all the State has as witnesses is law enforcement, and the fact he was in a fight with law enforcement, that is a reason we can ask and we can use, the State can use a Batson challenge." The prosecutor assumed from Mr. Willis's past that he would not fairly judge the credibility of police witnesses. Yet the prosecutor did not exercise peremptory strikes to remove Mr. Bates, a white juror who stated that he believed police often use undercover techniques in an unethical manner that regularly entraps innocent people. Even more troubling is the fact that the prosecutor did not strike Ms. Newton. Ms. Newton, a white juror, indicated that she believed that the Fort Smith Police Department had been wrong in accusing some of her grandchildren of involvement with controlled substances. Notably, the instant case involved the same police department and a similar offense. Furthermore, Ms. Newton stated outright that she believed police officers are often wrong and would give their testimony less weight than other witnesses. In these circumstances, we are constrained to conclude that the proffered explanation was a pretext for purposeful discrimination, and that Burnett's constitutional rights were violated.

Accordingly, we reverse and remand for a new trial.

BIRD and GRIFFEN, JJ., agree.