2009 Ark. App. 613

**Kenneth RILEY, Appellant,**

v.

**STATE of Arkansas, Appellee.**

**No. CA CR 08–1250.**

Court of Appeals of Arkansas.

Sept. 23, 2009.

Harrelson Law Firm, P.A., by Jeff Harrelson, Texarkana, for appellant.

Dustin McDaniel, Att'y Gen. by David R. Raupp, Sr. Ass't Att'y Gen., and Stella Phillips, Ass't Att'y Gen., for appellee.

COURTNEY HUDSON HENRY, Judge.

A jury in Miller County found appellant Kenneth Riley guilty of aggravated robbery, for which he was sentenced as an habitual offender to a term of eighty years in prison. For reversal, appellant contends that the trial court erred in overruling his *Batson* objection to the prosecutor's use of a peremptory strike to exclude an African–American woman from the jury. He also argues that the State did not present sufficient evidence to corroborate the testimony of the two accomplices. We affirm.[1]

At 12:19 a.m. on October 1, 2007, George Riley, who is appellant's nephew, and Timothy Holland used a handgun to rob an E–Z Mart convenience store in Texarkana, Texas. Shortly after 2:00 a.m. on that same morning, the two young men committed another aggravated robbery of the On–the–Run convenience store in Texarkana, Arkansas. The prosecuting attorney in Miller County charged appellant as an accomplice to the aggravated robbery of the On–the–Run store.

The evidence at trial disclosed that, moments after the On–the–Run robbery, Officer David Easley of the Texarkana, Arkansas, Police Department initiated a stop of a vehicle being driven by appellant in a parking lot within 100 yards of the convenience store. As the vehicle slowed, Riley and Holland exited the vehicle and fled on foot. Officer Ron Hudson, also of the Texarkana Police Department, pursued the two young men. Hudson apprehended Riley, who was entangled in a fence, but Holland escaped. Based on information provided by Riley, the police located the handgun used in the robberies in the area where the two men had fled from the officers.

The police retrieved videos from the two convenience stores' surveillance cameras that captured footage of both robberies. The videotape from the E–Z Mart depicts appellant entering the store ten minutes prior to the robbery. The videotape from On–the–Run reveals that appellant entered the store two times immediately before the robbery. On both occasions, appellant purchased a cigar. In addition, the vehicle driven by appellant contained articles of clothing worn by Riley and Holland in the E–Z Mart robbery along with cigarettes that they stole during the commission of that robbery.

Holland testified that appellant drove Holland and Riley from Little Rock to Texarkana and that they had been there for two weeks prior to the robberies. Holland said that appellant gave him the handgun to rob the stores and that the three of them agreed to share the money obtained in the robberies. Holland further testified that appellant entered the On–the–Run store before the robbery to make sure that only one employee was working that morning. Riley confirmed that appellant gave Holland the gun and that appel-

---

1. We previously ordered rebriefing due to deficiencies in appellant's abstract. *Riley v. State*, 2009 Ark. App. 389, 2009 WL 1362355 (unpublished).

lant conducted reconnaissance of the On–the–Run store before they robbed it.

■ Although designated as his second point on appeal, we are obligated to address appellant's argument challenging the sufficiency of the evidence prior to discussing other allegations of error in order to protect appellant's right against double jeopardy. *Stenhouse v. State*, 362 Ark. 480, 209 S.W.3d 352 (2005). When the sufficiency of the evidence is challenged on appeal, the test is whether there is substantial evidence to support the verdict. *Britt v. State*, 83 Ark. App. 117, 118 S.W.3d 140 (2003). Substantial evidence is evidence forceful enough to compel a conclusion one way or the other beyond speculation or conjecture. *Smith v. State*, 352 Ark. 92, 98 S.W.3d 433 (2003). We also view the evidence in the light most favorable to the State and consider only evidence that supports the verdict. *Clements v. State*, 80 Ark. App. 137, 91 S.W.3d 532 (2003).

■ In Arkansas, no distinction is made between principals and accomplices insofar as criminal liability is concerned. *Bienemy v. State*, 374 Ark. 232, 287 S.W.3d 551 (2008). When two or more persons assist one another in the commission of a crime, each is an accomplice and criminally liable for the conduct of the others. *Id.* However, when accomplice testimony is considered in reaching a verdict, Arkansas law provides that a person cannot be convicted based upon the testimony of an accomplice "unless corroborated by other evidence tending to connect the defendant . . . with the commission of the offense." Ark.Code Ann. § 16–89–111(e)(1)(A) (Repl.2005). Corroborating evidence is not sufficient if it merely shows that the offense was committed and the circumstances thereof. Ark.Code Ann. § 16–89–111(e)(1)(B). The corroboration must be sufficient, standing alone, to establish the commission of the offense and to connect the defendant with it. *Marta v. State*, 336 Ark. 67, 983 S.W.2d 924 (1999). Corroborating evidence need not, however, be so substantial in and of itself to sustain a conviction. *Andrews v. State*, 344 Ark. 606, 42 S.W.3d 484 (2001). The test is whether, if the testimony of the accomplice were completely eliminated from the case, the other evidence independently establishes the crime and tends to connect the accused with its commission. *Martin v. State*, 346 Ark. 198, 57 S.W.3d 136 (2001).

■■ The corroborating evidence may be circumstantial so long as it is substantial; evidence that merely raises a suspicion of guilt is insufficient to corroborate an accomplice's testimony. *Green v. State*, 365 Ark. 478, 231 S.W.3d 638 (2006). The presence of an accused in proximity of a crime, opportunity, and association with a person involved in the crime are relevant facts in determining the connection of an accomplice with the crime. *Passley v. State*, 323 Ark. 301, 915 S.W.2d 248 (1996).

Here, the record discloses that appellant entered both convenience stores shortly before the robberies occurred. Moments after the On–the–Run robbery, the police discovered appellant driving a vehicle with passengers who committed the robbery. This vehicle contained items stolen in the first robbery and clothing worn by Riley and Holland during the first robbery. These facts, when viewed as a whole, place appellant in close proximity to the crime and in association with those who committed the robbery in a manner strongly suggestive of joint participation. Thus, aside from the testimony of the accomplices, the State's proof connects appellant with the commission of the On–the–Run robbery, and we hold that substantial evidence supports the verdict of guilt.

We now turn to appellant's argument that the trial court erred by overruling his *Batson* objection to the prosecutor's use of a peremptory challenge to exclude an African American from the jury. The record discloses that the prosecutor used one of its challenges to strike Brittany Owens, a nineteen-year-old African–American woman. At the time of the strike, eleven jurors had been seated. Appellant raised an objection because Owens was the only African American drawn from the venire for possible selection as a juror. The court noted that there were African Americans in the venire whom the court excluded for cause, while others remained in the jury pool. The prosecutor then proceeded to explain the basis for its decision to strike Owens. The prosecutor stated that Owens had not completed a juror questionnaire and that she was young and soft-spoken. He stated his impression that she lacked the maturity to decide a case that carried the potential for a long prison sentence. The prosecutor also noted that Owens was not enrolled in school or employed, that she was not forthcoming with her answers, and that she acted as though she did not want to be there. The prosecutor further commented that she was the same age as the accomplices who were going to testify on behalf of the State. Appellant responded, generally, that the prosecutor did not present valid, race-neutral reasons for exercising the strike. However, the trial court accepted the prosecutor's explanations as being race neutral and found no discriminatory intent.

Immediately following the trial court's ruling, the prosecutor informed the trial court that the accomplices were not only the same age as Owens but that the accomplices were also African Americans. Upon inquiry from the court, the prosecutor acknowledged that Owens and the accomplices' shared race was a factor in his decision to use the peremptory strike. Appellant made no further argument, and after considering this explanation and the other reasons offered by the prosecutor, the trial court again overruled appellant's *Batson* objection. No more African Americans' names were drawn, and the jury ultimately selected was composed only of Caucasians.

On appeal, appellant argues that some of the prosecutor's reasons for striking Owens appear to be race neutral but that discriminatory intent was shown by the prosecutor's statement that he also excluded Owens because she was of the same race as the accomplices. Appellant further argues that improper motivation was evident because the prosecutor failed to consistently apply the stated reasons for striking Owens to other jurors. In this regard, appellant maintains that, although the prosecutor struck Owens because she had not completed a juror questionnaire, the prosecutor did not strike a Caucasian juror who also had not completed a questionnaire.

In *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Supreme Court held that the Equal Protection Clause of the Fourteenth Amendment prohibits the State from striking a juror solely on the basis of race. Striking even one juror for a racially motivated reason violates the Equal Protection Clause. *Holder v. State,* 354 Ark. 364, 124 S.W.3d 439 (2003). Our supreme court has delineated a three-step process to be used in the case of *Batson* challenges. *MacKintrush v. State,* 334 Ark. 390, 978 S.W.2d 293 (1998). First, the strike's opponent must present facts to raise an inference of purposeful discrimination; that is, the opponent must demonstrate a prima facie case of racial discrimination. *Hinkston v. State,* 340 Ark. 530, 10 S.W.3d 906 (2000).

Second, once the strike's opponent has made a prima facie case, the burden shifts to the proponent of the strike to present a race-neutral explanation for the strike. *Id.* If a race-neutral explanation is given, the inquiry proceeds to the third step, wherein the trial court must decide whether the strike's proponent has proven purposeful discrimination. *Id.* At this stage, the strike's opponent must persuade the trial court that the expressed motive of the striking party is not genuine but is rather the product of discriminatory intent. *Id.* The ultimate burden of persuasion that there is purposeful discriminatory intent rests with and never shifts from the party opposing the strikes. *Purkett v. Elem,* 514 U.S. 765, 115 S.Ct. 1769,. 131 L.Ed.2d 834 (1995).

 |₈We will reverse a trial court's ruling on a *Batson* challenge only when its findings are clearly against the preponderance of the evidence. *Armstrong v. State,* 366 Ark. 105, 233 S.W.3d 627 (2006). In deciding *Batson* claims, the trial court is called upon to evaluate not only whether the prosecutor's demeanor belies discriminatory intent, but also whether the juror's demeanor can credibly be said to have exhibited the basis for the strike attributed to the juror by the prosecutor. *Snyder v. Louisiana,* 552 U.S. 472, 128 S.Ct. 1203, 170 L.Ed.2d 175 (2008). Thus, the trial court is accorded some deference in making *Batson* rulings because it is in a superior position to observe the parties and to determine their credibility. *Ashley v. State,* 358 Ark. 414, 191 S.W.3d 520 (2004).

 In the present case, we need not decide whether appellant established a prima facie case of racial discrimination at the time of his objection. When appellant objected, the prosecutor explained his grounds for the strike, and the trial court ruled on the issue of discriminatory intent.

Once the party striking a juror offers a race-neutral explanation, and the trial court rules on the ultimate issue of intentional discrimination, the preliminary issue of whether a prima facie case was shown becomes moot. *Flowers v. State,* 362 Ark. 193, 208 S.W.3d 113 (2005). We thus proceed with an analysis of the prosecutor's reasons for exercising the peremptory challenge.

 The prosecutor initially stated that he struck Owens because (1) she did not complete a juror questionnaire; (2) she was young and soft-spoken; (3) she lacked maturity; (4) she was not enrolled in school or employed; (5) she was not forthcoming and behaved as though she |₉did not want to be there; and (6) she was the same age as the accomplices. The trial court found these reasons to be race neutral and concluded that the strike was not motivated by racial discrimination. A prosecutor's reasons for striking a juror will be deemed race neutral unless a discriminatory intent is inherent in the prosecutor's explanation. *Weston v. State,* 366 Ark. 265, 234 S.W.3d 848 (2006). None of the above reasons advanced by the prosecutor are peculiarly associated with race, and we can discern no discriminatory intent inherent in the prosecutor's explanations. *See, e.g., Bousquet v. State,* 59 Ark. App. 54, 953 S.W.2d 894 (1997) (holding that juror's age, demeanor, and employment background are acceptable as race-neutral explanations). Once the prosecutor gave these race-neutral reasons for the strike, appellant offered no additional argument to support his claim of racial discrimination, and the trial court upheld the prosecutor's use of the peremptory challenge. We cannot say that the trial court's ruling was clearly against the preponderance of the evidence. *See Weston v. State,* 366 Ark. 265, 234 S.W.3d 848 (2006) (holding that a trial court does not err by

denying a *Batson* challenge where the defendant presents no additional argument or evidence that the State's reasons for striking a juror were pretextual). *See also Owens v. State,* 363 Ark. 413, 214 S.W.3d 849 (2005); *Stenhouse v. State,* 362 Ark. 480, 209 S.W.3d 352 (2005).

Our inquiry does not end here, however, because following the trial court's ruling, the prosecutor offered yet another reason for excluding Owens. The prosecutor informed the court that Owens and the accomplices' shared race also played a role in his decision to strike her from the jury. The trial court considered this reason along with the other explanations given by the prosecutor and ruled that Owens's race did not cause the prosecutor to exclude her from the jury.

If a party exercises a peremptory challenge in part for a discriminatory purpose, a trial court must decide whether the party whose conduct is being challenged has demonstrated by a preponderance of the evidence that the strike would have nevertheless been exercised even if an improper factor had not motivated in part the decision to strike. *United States v. Darden,* 70 F.3d 1507 (8th Cir.1995). Where there are dual motivations, the question is often framed as one of "but for" causation, that is, we ask whether the prosecutor would have kept a particular juror but for his race. *Murray v. Groose,* 106 F.3d 812 (8th Cir.1997). *See also Burnett v. State,* 71 Ark. App. 142, 27 S.W.3d 454 (2000). If the prosecutor would have exercised the strike notwithstanding an improper motive, the peremptory challenge is not subject to constitutional attack. *Darden, supra.*

Here, the prosecutor gave a number of race-neutral reasons for striking the juror before adding one reason that was discriminatory. The trial court was in the best position to assess the prosecutor's credibility, observe the demeanor of the juror, and to gauge the prosecutor's motivations for exercising the strike. On this record, we conclude that the trial court's decision that the prosecutor would have stricken Owens regardless of her race is not clearly against the preponderance of the evidence.

Appellant also argues that the race-neutral reasons stated by the prosecutor were pretextual because he struck Owens for not filling out a questionnaire yet kept a Caucasian juror who also did not complete a questionnaire. One of the ways pretext can be established is by showing that the prosecutor failed to consistently apply stated reasons for striking African–American jurors to similarly situated Caucasian jurors. *Burnett v. State,* 71 Ark. App. 142, 27 S.W.3d 454 (2000). Appellant, however, did not present this argument to the trial court. Our law is well settled that issues raised for the first time on appeal, even constitutional ones, will not be considered because the trial court never had an opportunity to rule on them. *London v. State,* 354 Ark. 313, 125 S.W.3d 813 (2003). More specifically, the supreme court has expressly ruled that *Batson* arguments not made to the trial court are not preserved for appeal. *Weston, supra; Owens, supra.* Because appellant failed to raise this issue at trial, we do not address it.

Affirmed.

GLADWIN and GLOVER, JJ., agree.